STATE OF MINNESOTA

IN SUPREME COURT

A14-1936

Court of Appeals                                                                    Anderson, J.
                                                        Took no part, Chutich, McKeig, JJ.

Junious Taylor, Jr.,

                    Appellant,

vs.                                                                       Filed:  December 7, 2016
                                                                        Office of Appellate Courts
State of Minnesota,

                    Respondent.

_____

Cathryn Middlebrook, Chief Appellate Public Defender, Sharon E. Jacks, Kathryn J. Lockwood, Assistant State Public Defenders, Saint Paul, Minnesota, for appellant.

Lori Swanson, Attorney General, Saint Paul, Minnesota; and

John J. Choi, Ramsey County Attorney, Adam E. Petras, Assistant Ramsey County Attorney, Saint Paul, Minnesota, for respondent.

_____

S Y L L A B U S

The statutory duty to register as a predatory offender is a collateral consequence of a guilty plea.  Because a criminal defendant need not be warned of a collateral consequence before entering a guilty plea, the defense attorney's failure to advise the appellant of the duty to register as a predatory offender did not violate the appellant's right to effective assistance of counsel under the United States and Minnesota Constitutions.

Affirmed.

1

ANDERSON, Justice.

Appellant Junious Taylor, Jr. pleaded guilty to felony domestic assault in Ramsey County District Court. Following sentencing, Ramsey County Community Corrections (Corrections) notified the district court that, due to his conviction, Taylor was required to register as a predatory offender. Taylor moved to withdraw his guilty plea, and the district court denied the motion. Taylor appealed, and the court of appeals affirmed the district court's decision. *Taylor v. State*, No. A14-1936, 2015 WL 4877740, at *2-3 (Minn. App. Aug. 17, 2015). Because a defendant's right to effective assistance of counsel under the United States and Minnesota Constitutions is not violated when a defense attorney fails to advise the defendant, before the defendant enters a plea of guilty, of the duty to register as a predatory offender, we affirm the decision of the court of appeals.

I.

On October 6, 2013, Taylor's then-girlfriend S.P. reported to the police that, while Taylor was intoxicated, he wrestled her to the ground, threw her phone, kicked her in the abdomen several times, grabbed her from behind, and pinched her face. The State charged Taylor with felony domestic assault under Minn. Stat. § 609.2242, subd. 4 (2014).

Taylor pleaded guilty to the charged offense in Ramsey County District Court on October 22, 2013. At no time during the proceedings up to and including the guilty plea hearing did the district court, the State, or Taylor's attorney advise Taylor that, as a result of pleading guilty, he would be required to register as a predatory offender under Minn.

Stat. § 243.167 (2014). Similarly, at the sentencing hearing on January 8, 2014, no one raised the issue of Taylor's duty to register.

Corrections discovered the error in March 2014, well after sentencing, while updating the presentence investigation report for use in an unrelated matter, and submitted a revised report to the district court. That report noted that Taylor had been convicted of criminal sexual conduct in 1989 and had completed the registration requirements for that conviction. But as a result of his most recent conviction, he was again required to register as a predatory offender. The new registration requirement was mandated by Minn. Stat. § 243.167, which requires registration as a predatory offender if the offender was previously convicted of an offense listed in Minn. Stat. § 243.166 and if the new conviction is an offense against the person. Because criminal sexual conduct, the crime of which Taylor was convicted in 1989, is listed in Minn. Stat. § 243.166, and because felony domestic assault, the crime to which Taylor pleaded guilty in October 2013, qualifies as a crime against the person, *see* Minn. Stat. § 243.167, subd. 1, Taylor was required to register as a predatory offender.

At the May 7 resentencing hearing, defense counsel advised the district court that Taylor wanted to withdraw his guilty plea. Taylor subsequently filed a written motion and memorandum seeking to withdraw his guilty plea on the ground that he had not been aware that his conviction would trigger the requirement to register as a predatory offender. The district court denied Taylor's request, concluding that counsel's failure to inform Taylor of the predatory-offender-registration requirement did not constitute ineffective assistance of counsel and that Taylor's guilty plea was intelligently made. Taylor appealed.

The court of appeals addressed three issues. It held that (1) Taylor's plea was intelligent because predatory-offender registration is a "collateral consequence" of that plea, (2) the parties' "mutual mistake" about the predatory-offender-registration requirement was not a reversible error, and (3) Taylor's counsel was not ineffective. *Taylor*, 2015 WL 4877740, at *2-3. Taylor petitioned this court to review his claim of ineffective assistance of counsel, arguing that due to counsel's ineffectiveness, his plea was not intelligent. We granted Taylor's petition.

## II.

The Sixth Amendment to the United States Constitution and Article I, Section 6, of the Minnesota Constitution guarantee a criminal defendant "the right to the effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)); *see also Ferguson v. State*, 826 N.W.2d 808, 816 (Minn. 2013). Taylor argues that he received ineffective assistance of counsel because his attorney failed to inform him that, by pleading guilty to felony domestic assault, he would be required to register as a predatory offender. Because he was not aware of the registration requirement, Taylor asserts, his guilty plea was unintelligent and therefore invalid. Relying on our decision in *Kaiser v. State*, 641 N.W.2d 900 (Minn. 2002), the State contends that Taylor has not shown that he received ineffective assistance of counsel. We review both the validity of a guilty plea and a claim of ineffective assistance of counsel de novo. *State v. Raleigh*, 778 N.W.2d 90, 94 (Minn. 2010); *State v. Rhodes*, 657 N.W.2d 823, 842 (Minn. 2003).

4

"A defendant has no absolute right to withdraw a guilty plea after entering it." *Raleigh*, 778 N.W.2d at 93. The Minnesota Rules of Criminal Procedure provide, however, that "the court must allow a defendant to withdraw a plea of guilty . . . [when] withdrawal is necessary to correct a manifest injustice." Minn. R. Crim. P. 15.05, subd. 1. We have said that "[a] manifest injustice exists if a guilty plea is not valid." *Raleigh*, 778 N.W.2d at 94. To be valid, a guilty plea must be accurate, voluntary, and intelligent. *State v. Trott*, 338 N.W.2d 248, 251 (Minn. 1983); *see also North Carolina v. Alford*, 400 U.S. 25, 31 (1970) (stating that a guilty plea is valid when "the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant").

We said in *Kaiser* that "[t]he purpose of the requirement that the plea be intelligent is to insure that the defendant understands the charges, understands the rights he is waiving by pleading guilty, and understands the consequences of his plea." 641 N.W.2d at 903 (quoting *Trott*, 338 N.W.2d at 251). If the defendant is represented, counsel plays a key role in ensuring that any plea is intelligent by explaining the charges, the rights to be waived, and the consequences of the plea. Counsel, however, is not required to advise the defendant of *every* consequence for the defendant's plea to be intelligent. We held in *Alanis v. State* that "it is the *direct* consequences of the guilty plea to which we refer." 583 N.W.2d 573, 578 (Minn. 1998) (emphasis added), *abrogated in part by Padilla v. Kentucky*, 559 U.S. 356, 374 (2010); *see Campos v. State*, 816 N.W.2d 480, 485-88 (Minn. 2012). Accordingly, a defendant's lack of awareness of a *collateral* consequence of a guilty plea does not render the guilty plea unintelligent and entitle a defendant to withdraw it. *Alanis*, 583 N.W.2d at 578.

5

## A.

In *Kaiser*, as here, the defendant argued that his guilty plea was unintelligent, and therefore constitutionally invalid, because he was not advised that he would be required to register as a predatory offender as a consequence of his guilty plea. 641 N.W.2d at 902-03. We held in *Kaiser* that the requirement to register as a predatory offender is a collateral consequence. *Id.* at 907. Accordingly, defense counsel's "[f]ailure to advise [Kaiser] of the registration requirement [did] not make the plea unintelligent." *Id.* Resolution of Taylor's ineffective-assistance-of-counsel claim depends on how we interpret our decision in *Kaiser*.

Our analysis in *Kaiser* relied squarely on *Alanis*, which dealt with the deportation consequences of a guilty plea. 641 N.W.2d at 903-04. In *Alanis*, we held that defense counsel's failure to advise a defendant about the risk of deportation did not constitute ineffective assistance of counsel because deportation was a collateral consequence of a guilty plea. 583 N.W.2d at 578-79. But the United States Supreme Court later overruled *Alanis* by holding that the Sixth Amendment requires defense counsel to give a noncitizen defendant advice about deportation. *Padilla*, 559 U.S. at 374; *Campos*, 816 N.W.2d at 486 (acknowledging that *Alanis* is no longer good law). Taylor contends that because *Kaiser*, like *Alanis*, relied on the distinction between direct and collateral consequences, *Padilla* also has effectively overruled *Kaiser*. We therefore turn to the question of whether *Padilla* undermines our decision in *Kaiser*.

6

B.

In *Padilla*, the Supreme Court addressed whether advice about deportation was within "the ambit of the Sixth Amendment right to counsel" and then asked whether a defense attorney's failure to inform a defendant of deportation consequences fell below an objective standard of reasonableness under *Strickland*. 559 U.S. at 365-67. The Court held that defense counsel is "constitutionally deficient" when he or she fails to inform a noncitizen defendant that a plea of guilty carries with it a risk of deportation. *Id.* at 374. Taylor asserts that the analysis in *Padilla* with respect to deportation applies equally to the consequence of predatory-offender registration.

Taylor correctly claims that some language in *Padilla* could be read to undermine our reasoning in *Kaiser*. In *Padilla*, the Court said that the distinction between direct consequences and collateral consequences does not necessarily dictate whether advice about an issue is included within the right to effective assistance of counsel. *Id.* at 365. But the Court was careful not to categorically reject the distinction between direct consequences and collateral consequences. Although noting that it had "never applied" this distinction, the Court acknowledged that many jurisdictions rely on the direct-versus-collateral framework to conclude that counsel's failure to advise the defendant about the risk of deportation does not give rise to a claim of ineffective assistance of counsel. *Id.* at 365 n.9. The Court also stated that it is "uniquely difficult to classify [deportation] as either a direct or a collateral consequence" because of "its close connection to the criminal process." *Id.* at 366. Finally, the Court expressly declined to consider, let alone decide, whether the direct-versus-collateral framework is ever appropriate, focusing instead on

7

"the unique nature of deportation." *Id.* at 365. In other words, *Padilla* does not explicitly require us to abandon the direct-versus-collateral distinction or overrule *Kaiser.*

The Court iterated in *Chaidez v. United States* that "a lawyer's advice (or non-advice) about a plea's deportation risk" is "not exempt from Sixth Amendment scrutiny." ___ U.S. ___, ___, 133 S. Ct. 1103, 1110 (2013). It clarified that *Padilla* relied on the unique nature of deportation; specifically, that it is (1) "intimately related to the criminal process," (2) "nearly an automatic result of some convictions," and (3) "a particularly severe penalty." *Id.* at ____, 133 S. Ct. at 1110 (quoting *Padilla*, 559 U.S. at 365-66) (internal quotation marks omitted). Some, but not all, of these characteristics apply to predatory-offender registration as well.

Predatory-offender registration is like deportation in that it is "intimately related to the criminal process" and "nearly an automatic result" of some convictions. *Padilla*, 559 U.S. at 365-66. Predatory-offender registration is closely tied to the criminal process because the duty to register arises from criminal convictions and requires significant contact with "corrections agent[s]" and "law enforcement authorities." Minn. Stat. § 243.166 (2014) (listing registration and on-going requirements for predatory offenders). And predatory-offender registration is automatically required as a matter of law for defendants who are convicted of certain crimes. *Id.*, subd. 1b; *see also* Minn. Stat. § 243.167. In fact, we acknowledged as much in *Kaiser* when we noted that, upon pleading guilty to certain offenses, defendants are "required to register immediately, definitely and automatically." 641 N.W.2d at 904.

8

But *compared with* deportation, predatory-offender registration is not a "particularly severe" penalty. *Padilla*, 559 U.S. at 365. By definition, deportation results in the offender's forcible exclusion from the United States. *See Campos*, 816 N.W.2d at 506 (Page, J., dissenting). A deportee can be permanently separated from his home, family, and community and returned to a country to which he or she may have little or no cultural, social, or linguistic connection. The effects of deportation also may extend to the offender's family members, including spouses and children who themselves have committed no crime and who "lawfully [live] in this country." *Padilla*, 559 U.S. at 374.

The burden placed on people who are required to register as predatory offenders is less severe than removal from the United States. Predatory offenders must register their primary and secondary residential addresses; the addresses of all property they own, lease, or rent; the addresses of all locations where they work; the addresses of all schools they attend; and the year, model, make, license plate number, and color of all vehicles they own or regularly drive. Minn. Stat. § 243.166, subd. 4a(a). There are additional rules, some fairly complex, for unique situations related to relocation, employment, and other life events. *See id.*, subds. 3, 3a. Registered predatory offenders also must disclose their status prior to admission to a health care facility. *Id.*, subd. 4b(b). Predatory offenders who fail to comply with any of the requirements in section 243.166 could be convicted of a felony and sentenced to prison for up to 5 years. *Id.*, subd. 5. Finally, beyond what is required of predatory offenders, law enforcement provides information about some offenders to the public, and certain offenders are subject to restrictions on their places of residence. Minn. Stat. § 244.052, subds. 4-4a (2014). These requirements may be onerous, may limit an

9

offender's choices, and, if the offender fails to follow the rules, may result in a conviction for a crime and a period of incarceration. Although hardly inconsequential, these penalties are still less harsh than the automatic deportation at issue in *Padilla*.

We also distinguish between deportation and predatory-offender registration based on the different purposes of these two statutory schemes. The State argues that deportation is punitive, whereas the aim of requiring certain people to register as predatory offenders is to protect society. We agree. In *Padilla*, although the Supreme Court did not discuss in detail the legislative reasoning behind the requirement that certain noncitizens who have been convicted of crimes be deported, it described deportation as a "penalty." 559 U.S. at 365-66. In contrast, in *Smith v. Doe*, the Court concluded that Alaska's "sex offender registration and notification law," which was similar to but narrower than Minnesota's predatory-offender registration statute, was "nonpunitive." 538 U.S. 84, 92, 105 (2003). This language supports what we said in *Kaiser* about predatory-offender registration in Minnesota: that it is "civil and regulatory, and not penal." 641 N.W.2d at 905.

We conclude that *Padilla* does not compel us to overturn *Kaiser* because deportation is a more severe consequence than predatory-offender registration, and the Supreme Court has classified deportation as a penalty but has classified predatory-offender registration as "nonpunitive."[1] We therefore hold that a defense attorney's failure to advise a defendant

---

[1]     Our reasoning here is similar to that of the Utah Supreme Court in *State v. Trotter*, 330 P.3d 1267 (Utah 2015), which decided a nearly identical question. *Trotter* concluded that *Padilla* does not extend to sex-offender registration because the requirements placed on offenders required to register, "while onerous, do not rise to the same level of severity as deportation from the country." *Id.* at 1274-75. *But see Alexander v. State*, 772 S.E.2d 655, 659 (Ga. 2015) ("We . . . hold that, whether a guilty plea gives rise to a direct or

10

about predatory-offender-registration requirements before the defendant enters a guilty plea does not violate a defendant's rights to the effective assistance of counsel under the United States and Minnesota Constitutions and, thus, Taylor is not entitled to withdraw his guilty plea.

For the foregoing reasons, we affirm the decision of the court of appeals.

Affirmed.

CHUTICH, J., took no part in the consideration or decision of this case.

MCKEIG, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.

---

collateral consequence, when a criminal defendant seeks to withdraw a guilty plea on the ground of ineffective assistance of counsel, the ineffective assistance claim must be evaluated under the two-prong test set forth in *Strickland v. Washington*.").