**STATE of Minnesota, Appellant,**

v.

**Willie James BROWN, petitioner, Respondent.**

**A16-1619**

Court of Appeals of Minnesota.

Filed May 8, 2017

Review Denied July 18, 2017

Lori Swanson, Attorney General, St. Paul, Minnesota; and John Choi, Ramsey County Attorney, Adam E. Petras, Assistant County Attorney, St. Paul, Minnesota (for appellant).

Cathryn Middlebrook, Chief Appellate Public Defender, Chelsie Willett, Assistant Public Defender, St. Paul, Minnesota (for respondent).

Considered and decided by Stauber, Presiding Judge; Ross, Judge; and Rodenberg, Judge.

## OPINION

ROSS, Judge

Respondent Willie Brown pleaded guilty to battery, robbery, and resisting police in Florida, served time in prison, and trans-ferred his remaining year of probation to Minnesota. While on probation in Minnesota, Brown was charged with and pleaded guilty to being an ineligible person in possession of a firearm. He was extradited to Florida and informed that he faced a potential life sentence for violating his probation. Brown moved to withdraw his Minnesota guilty plea, and the district court permitted withdrawal because Brown was not informed of the "direct" consequence of a potential life sentence, rendering his plea unintelligent and establishing a manifest injustice. On appeal by the state, we hold that Brown's potential Florida probation-violation sentence is not a direct consequence of his Minnesota guilty plea. We therefore reverse the district court's order.

## FACTS

### Florida Convictions and Probation

Willie Brown pleaded guilty to aggravated battery, robbery with a deadly weapon, and resisting a peace officer without violence in Florida in October 2012. Brown's signed plea petition acknowledged that he understood the maximum penalty for his crime to be 46 years. The same page of Brown's plea petition, which he initialed, contained the following acknowledgment:

> I understand that if I am placed on probation, or community control, I must obey all general and special conditions of probation or community control. If I violate probation or community control, even in a technical way, I can be rearrested and charged with the violation.... If the Prosecution were to satisfy the Court of a violation, I understand I could receive the maximum sentence provided by law for the underlying offense.

The Florida district court accepted Brown's plea and sentenced him to five

years of imprisonment with one year of supervised probation.

Brown applied to transfer his probation to Minnesota in January 2015. A probation order Brown signed in June 2015 contained the following relevant advisory regarding the terms of his probation:

YOU ARE HEREBY PLACED ON NOTICE that ... [i]f you violate any of the conditions of your probation, you may be arrested and the court may revoke your probation, adjudicate you guilty if adjudication of guilt was withheld, and impose any sentence that it might have imposed before placing you on probation or require you to serve the balance of the sentence.

The order also required, in relevant part, as follows:

(4) You will not possess, carry or own any firearm. You will not possess, carry, or own any weapon without first procuring the consent of your officer.

(5) You will live without violating any law. A conviction in a court of law is not necessary for such a violation of law to constitute a violation of your probation, community control, or any other form of court ordered supervision.

### Minnesota Possession of a Firearm by an Ineligible Person

In August 2015, St. Paul police officers saw Brown walking with two other men, whom the officers suspected had ties to gang activity. The officers attempted to speak with them, but Brown immediately fled on foot. As he fled, he discarded a backpack and evaded the police. But police recovered a nine-millimeter semiautomatic handgun and two bullets from Brown's backpack. Police located and arrested Brown.

Brown pleaded guilty to being an ineligible person in possession of a firearm in December 2015. He indicated that he had reviewed his entire plea petition with his attorney. Brown acknowledged that he was ineligible to possess firearms due to his Florida convictions. The district court accepted Brown's plea. The parties appeared for a sentencing hearing in February 2016, and the district court sentenced Brown to 60 months in prison stayed for 10 years, with 365 days to be served in the workhouse.

Brown petitioned to withdraw his guilty plea in August 2016, arguing that his plea was unintelligent because he was not advised about a potential life sentence in Florida, and because his attorney inaccurately advised him that the "worst possible scenario" would be serving the remainder of his Florida probation sentence until April 9, 2016. In a supporting affidavit, Brown detailed his extradition to Florida where he met with an attorney who informed him that he was facing a possible life prison sentence for violating probation. Brown claimed that, before meeting with his Florida counsel, he was never advised by anyone that his Minnesota guilty plea would result in a possible life sentence. And he claimed that, if he *had* been told, he would not have pleaded guilty.

Brown's Minnesota attorney also provided an affidavit. She swore that Brown's Minnesota probation officer repeatedly informed her that Brown would be "off paper" in Florida on April 9, 2016. The Minnesota attorney also spoke with Brown's Florida probation officer and confirmed a scheduled termination date of April 9, 2016. She then advised Brown that she would attempt to persuade Florida authorities to drop any hold on Brown and allow him to finish his probationary period in Minnesota. But at no time did she discuss with Brown the possibility of a life

sentence. And no Florida or Minnesota correctional officers ever informed her that Brown faced life imprisonment in Florida.

The prosecutor asked that the district court deny Brown's motion because his plea was intelligent. He argued that the possible probation violation was merely a collateral consequence and also that Brown knew that any probation violation included the possibility of the "maximum sentence authorized by law."

The district court granted Brown's request to withdraw his plea. It found that Brown's Minnesota attorney was "aware [Brown] was on probation in Florida for two felonies, but was under the impression that his Florida probation would decay as of April 9, 2016." It also found, "At no point in time did [Brown's] public defender in the Minnesota proceedings . . . advise him that he may receive a life sentence in Florida as a result of his plea and conviction for firearm possession." The district court determined that Brown's attorney had told Brown the "worst possible scenario" would be his serving the remainder of his Florida probation until April 9, 2016, and that there had been "no discussion regarding a possible life sentence." It reasoned that "[Brown] pleaded guilty with the understanding that he may have to face a probation violation in Florida, but he had no idea that the probation violation could carry a life sentence." And it determined, "A life sentence is a direct consequence of the guilty plea as it flows directly from his conviction for firearm possession." It concluded, "This Court finds that due to the fact that at the time of his plea . . . [Brown] was not informed of the possibility that his guilty plea could trigger a direct consequence of a life sentence in Florida, his plea was not intelligently made and he must be allowed to

withdraw his plea to correct a manifest injustice."

The state appeals.

## ISSUES

I. Did the district court err by determining that Brown's potential life sentence in Florida was a direct consequence of his Minnesota conviction?

II. Did misinformation about the potential probation consequence render Brown's plea unintelligent?

## ANALYSIS

▆▆▆ A district court must allow a defendant to withdraw a guilty plea "at any time" to correct a manifest injustice. Minn. R. Crim. P. 15.05, subd. 1. A manifest injustice exists if a guilty plea is invalid. *State v. Raleigh*, 778 N.W.2d 90, 94 (Minn. 2010). A guilty plea is invalid if it is not accurate, voluntary, or intelligent. *See id.*

▆▆▆ The district court determined that Brown's guilty plea was unintelligent and invalid because he was not advised about the "direct" consequences that his conviction would have on his potential Florida probation violation. We generally review a district court's decision on a post-conviction petition for an abuse of discretion. *See Griffin v. State*, 883 N.W.2d 282, 284 (Minn. 2016). But we review questions of law, including the validity of a guilty plea, de novo. *See State v. Nicks*, 831 N.W.2d 493, 503 (Minn. 2013); *Raleigh*, 778 N.W.2d at 94. We review the district court's factual findings for clear error. *Griffin*, 883 N.W.2d at 284.

The state argues that we should reverse because the district court erred as a matter of law by determining that a potential probation-violation penalty in an unrelated case is a direct consequence of a guilty plea. Brown contends that the possible probation-violation penalty was a direct

consequence, and he argues alternatively that, regardless of the type of consequence, withdrawal of his plea was proper because he was misadvised about the consequence.

## I

The district court concluded that the possible triggering of a life sentence in Brown's Florida probation-violation case was a direct consequence of Brown's Minnesota guilty plea for ineligible possession of a firearm. Whether a potential probation consequence in an unrelated case is a direct or collateral consequence of a guilty plea is a question of first impression in Minnesota. We hold that it is collateral because the potential life sentence in Florida does not flow definitely, immediately, and automatically from Brown's Minnesota guilty plea.

■■■ Our holding is informed by the distinction between direct and collateral consequences in the context of the intelligence of a plea. "The intelligence requirement [of a valid guilty plea] ensures that a defendant understands the charges against him, the rights he is waiving, and the consequences of his plea." *Raleigh*, 778 N.W.2d at 96. But a defendant need not know *every* consequence of his plea for the plea to be intelligent. *Taylor v. State*, 887 N.W.2d 821, 823 (Minn. 2016). The intelligence requirement refers to the *direct* consequences of a plea and conviction. *Raleigh*, 778 N.W.2d at 96. "[A] defendant's lack of awareness of a *collateral* consequence of a guilty plea does not render the guilty plea unintelligent and entitle a defendant to withdraw it." *Taylor*, 887 N.W.2d at 823. Direct consequences are "definite, immediate[,] and automatic" and are "punitive and a part of a defendant's sentence." *Kaiser v. State*, 641 N.W.2d 900, 907 (Minn. 2002).

The state and Brown both point to *State v. Crump*, 826 N.W.2d 838 (Minn. App. 2013), *review denied* (Minn. May 21, 2013). In *Crump*, the district court denied Crump's motion to withdraw his guilty plea, which Crump based on his ignorance of the plea's effect on a later charge from a prior, separate incident. *Id.* at 840–41. Before Crump's guilty plea, he "had been stopped and arrested for DWI in the same county[,] . . . the DWI charge resulting from that arrest was not filed against him until after his plea[,] . . . [and] [b]ased upon his own statements at sentencing, he was also aware that he had other charges in other counties." *Id.* at 843. We affirmed the district court, reasoning that "a warning that the sentences for future convictions after a plea may be enhanced is needless. . . . Everyone knows that second and subsequent offenders tend to be punished more heavily than first offenders." *Id.* (quotations and citations omitted). We saw the eventual criminal charge as "a contingency that may not occur" and reasoned that "the possibility of an enhanced sentence in another case is no automatic consequence." *Id.* (quotation and citation omitted). Likewise here, a life sentence in Florida is also a "contingency that may not occur."

Least persuasive is Brown's argument that his Florida probation violation "was triggered as soon as the guilty plea was entered, as evidenced by the fact that [he] was in an extradition hearing within four days of entering his guilty plea." Even if Brown's arrest and conviction directly and immediately violated the terms of his Florida probation, the possible life sentence is not definite, immediate, or certain. Brown does not argue that a life sentence in Florida is assured, only that his plea exposed him to the possibility.

Other jurisdictions have reached similar conclusions. *See, e.g., Miller v. State*, 207

Md.App. 453, 53 A.3d 385, 406 (Md. Ct. Spec. App. 2012) ("If following a conviction, one is found guilty of a violation of probation for some earlier offense, that's also a collateral consequence." (quotation omitted)), *aff'd*, 435 Md. 174, 77 A.3d 1030 (2013); *Commonwealth v. Brown*, 451 Pa.Super. 514, 680 A.2d 884, 887 (1996) ("[T]he possibility of probation revocation is a collateral consequence to a guilty plea, and the fact that a defendant was not informed that he faces such a possibility in an unrelated criminal case does not undermine the validity of the plea.").

■■■ The district court erred as a matter of law when it determined that Brown's potential life sentence in the unrelated Florida case is a direct consequence of his Minnesota guilty plea. We hold that a potential probation-violation penalty in an unrelated case is not a direct consequence of a defendant's guilty plea and conviction.

The state argues alternatively that the district court clearly erred by finding that Brown was not informed of the possible probation consequence in Florida. Our resolution of the legal question moots this factual issue.

## II

Having determined that a potential probation consequence in an unrelated case is merely a collateral consequence of Brown's Minnesota guilty plea, we turn to Brown's alternative argument that we should affirm the district court because his attorney misadvised him of the potential probation consequence.

Beyond determining that Brown was *not* advised about the potential life sentence, the district court also observed that Brown's attorney told Brown that the "worst possible scenario" would be his serving the remainder of his Florida probation until April 9, 2016. The district court apparently premised this finding on Brown's affidavit ("All of the information that I received ... indicated that I only had until April 9, 2016, before I would be discharged from my probation case in Florida.") and his Minnesota attorney's affidavit ("Neither [the Minnesota or Florida probation officers] informed me that Mr. Brown was facing a life sentence in Florida.... Relying on this information, I advised Mr. Brown of the same."). It appears that the district court adopted the language "worst possible scenario" from Brown's postconviction memorandum. The affidavits do not seem to support the finding that Brown's attorney told Brown that the "worst possible scenario" he faced was serving the remainder of his probation in Florida. But we will nonetheless address the merits of Brown's legal argument.

Brown argues, "A plea is not intelligent if the defendant is misadvised regarding the consequences of a guilty plea, whether direct or collateral." Brown cites several cases to support this proposition.[1] He relies first on *Barragan v. State*, 583 N.W.2d 571, 572 (Minn. 1998), as "suggesting that in certain cases a plea withdrawal may be permitted when the defendant is misinformed about the collateral deportation consequences of that plea." *Barragan* does not support that proposition. Barragan moved to withdraw his guilty plea, arguing that the prosecutor misrepresented the possibility of deportation. 583 N.W.2d at

---

1. Several of these cases characterized deportation consequences as collateral. The United States Supreme Court effectively abrogated the distinction as applied to deportation consequences. *See Padilla v. Kentucky*, 559 U.S. 356, 357, 374, 130 S.Ct. 1473, 1476, 1486, 176 L.Ed.2d 284 (2010) (holding the Sixth Amendment requires defense counsel to inform clients of potential deportation consequences). We consider these cases only for their treatment of misinformation about collateral consequences.

571–72. The district court denied the motion, and this court reversed because permitting Barragan's plea withdrawal was necessary to correct a manifest injustice. *Id.* at 571. The supreme court reversed this court and reinstated the district court's order after determining that the prosecutor made no promises concerning deportation. *Id.* at 572.

The proposition Brown relies on actually finds its support in this court's decision that the supreme court reversed. We had determined that the prosecutor "told Barragan not to worry about deportation," that Barragan relied on the statement, and that the statements "were not collateral to the guilty plea, but were central to Barragan's decision." *Barragan v. State*, No. C5-97-326, 1997 WL 739336, at *3 (Minn. App. Dec. 2, 1997).[2]

Brown cites an unpublished opinion, *State v. Levkovich*, No. C4-03-232, 2003 WL 21694582, at *3 (Minn. App. July 22, 2003), *review denied* (Minn. Sept. 24, 2003), in which we said that "being affirmatively misinformed about the collateral consequences of a plea by an attorney may warrant grounds to withdraw that plea." *Levkovich* is unpublished and is therefore merely persuasive authority. *See Sarber v. Comm'r of Pub. Safety*, 819 N.W.2d 465, 469 n.3 (Minn. App. 2012). Unpublished opinions are not precedential, Minn. Stat. § 480A.08, subd. 3 (2016), and the cited opinion is off point. We did not determine a manifest injustice in *Levkovich*; we instead remanded to the district court to allow Levkovich to *prove* that "he was affirmatively misinformed and that any misinformation affected whether the plea was accurate, voluntary, and intelligent." *Levkovich*, 2003 WL 21694582, at *3.

Brown also offers cases from foreign jurisdictions permitting plea withdrawal based on misinformation about collateral consequences. *See Meier v. State*, 337 N.W.2d 204 (Iowa 1983); *Beal v. State*, 51 S.W.3d 109 (Mo. Ct. App. 2001); *United States v. Russell*, 686 F.2d 35 (D.C. Cir. 1982). We believe these cases are distinguishable. Despite some mixed treatment in these jurisdictions, we observe that many of these cases (as well as *Levkovich*, 2003 WL 21694582, at *1, 4) also implicate ineffective-assistance claims. Brown did not present an ineffective-assistance argument, and our review is limited to determining the existence of a manifest injustice entitling him to withdraw his plea. The caselaw does not compel us to conclude that misinformation about a collateral consequence renders a plea unintelligent and manifestly unjust. And such a categorical rule would require plea withdrawals for misadvice even about collateral consequences of little significance with possibly no effect on the defendant's decision to plead guilty.

Brown makes a seemingly independent argument that, regardless of our legal conclusions on the intelligence of his plea or the collateral nature of a probation consequence, he has still demonstrated an independent manifest injustice warranting plea withdrawal. He argues that challenges to the accuracy, intelligence, and voluntariness of a plea are not the only way to demonstrate a manifest injustice. He cites *State v. Anyanwu*, 681 N.W.2d 411, 414–15 (Minn. App. 2004), in which we determined a plea was invalid despite it being accurate, voluntary, and intelligent because the district court impermissibly injected itself into the plea negotiations. *Anyanwu* is inapposite.

**2.** We note that the supreme court in *Barragan* reached its conclusion on a factual basis and did not need to consider the legal reasoning of our court. 583 N.W.2d at 572.

## DECISION

The district court incorrectly determined that a potential probation-violation penalty in Brown's Florida case was a direct consequence of his guilty plea and conviction in Minnesota. His Minnesota lawyer's failure to advise him about this potential consequence, and any misinformation about it, did not render Brown's guilty plea unintelligent. We see no manifest injustice entitling Brown to withdraw his guilty plea. We therefore reverse and remand to the district court to reinstate Brown's conviction.

**Reversed and remanded.**