*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-0243**

State of Minnesota,
Respondent,

vs.

Ronald Lee Schober,
Appellant.

**Filed January 29, 2024**
**Affirmed**
**Ede, Judge**

Carver County District Court
File No. 10-CR-21-173

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Mark Metz, Carver County Attorney, Angella M. Erickson, Assistant County Attorney, Chaska, Minnesota (for respondent)

Christina Zauhar, Halberg Criminal Defense, Bloomington, Minnesota (for appellant)

Considered and decided by Bjorkman, Presiding Judge; Worke, Judge; and Ede, Judge.

**NONPRECEDENTIAL OPINION**

**EDE**, Judge

In this direct appeal from the judgment of conviction for third-degree criminal sexual conduct, appellant challenges the district court's order denying his presentence motion to withdraw his guilty plea. Appellant argues that his guilty plea was invalid

because of ineffective assistance of counsel and, in the alternative, that he established fair-and-just reasons to withdraw his plea. Because we conclude that appellant's plea was not invalid and that the district court did not abuse its discretion by determining that appellant did not advance fair-and-just reasons for plea withdrawal, we affirm.

**FACTS**

*Underlying Charges and Pretrial Proceedings*

Respondent State of Minnesota charged appellant Ronald Lee Schober with one count of third-degree criminal sexual conduct against a mentally impaired victim, in violation of Minnesota Statutes section 609.344, subdivision 1(d) (2020). According to the complaint, Schober was employed as a maintenance worker at a care facility for persons with developmental disabilities, and he sexually assaulted one of the facility's residents. Because the charges carried the potential for a life sentence, the state presented the matter to a grand jury, which returned an indictment alleging two counts of third-degree criminal sexual conduct. The prosecution also filed written notice of its intent to seek an upward durational departure and consecutive sentences.

Before trial, the prosecution moved to introduce *Spreigl* evidence[1] relating to Schober's prior sex-offense convictions. In May 2022, after a continuance of several months because of injuries the victim suffered in an unrelated fall and several issues identified by the attorneys, the parties filed simultaneous briefs addressing the admissibility of the *Spreigl* evidence. The district court ruled that evidence of Schober's prior out-of-

---

[1] Evidence of other crimes is known in Minnesota as "*Spreigl* evidence." *State v. Kennedy*, 585 N.W.2d 385, 389 (Minn. 1998) (citing *State v. Spreigl*, 139 N.W.2d 167 (Minn. 1965)).

state convictions for first-degree statutory rape and indecent liberties—based on the sexual abuse of five children who were his chiropractic patients—was admissible at trial, but evidence related to his other sex-offense convictions was inadmissible.

### *Guilty Plea*

The district court scheduled a jury trial to begin on June 14, 2022. That day, before voir dire, the prosecution explained a plea offer to Schober on the record. Under the proposed agreement, Schober would plead guilty to one count of third-degree criminal sexual conduct, the other count would be dismissed, and Schober would receive a life sentence with the possibility of release after 41 months. The prosecution clarified that, if Schober proceeded to trial and was found guilty, the state would seek a minimum prison term of more than 57 months. After hearing the prosecution's offer, Schober confirmed that he did not want to accept it, but did request to speak with his attorney for "clarification of one thing." Schober also acknowledged that, aside from the matter he wished to discuss with his counsel, he had had enough time to discuss the case, the offer, and his different options for trying the case with his lawyer.

The following afternoon, after consulting with Schober and speaking with Schober's wife, Schober's attorney told the district court that Schober wanted to accept the prosecution's offer. Schober confirmed that he was confident that he would go through with the plea and he thanked the district court "for the extra time to make that determination." He then completed a plea petition with his counsel. The district court noted that the plea petition erroneously stated that Schober would be pleading guilty to both

3

counts, instead of just one count, and the court corrected the petition on the record. Schober acknowledged that the corrected petition reflected his understanding of the plea agreement.

The district court then asked whether Schober felt pressured to take the plea, and he responded, "This will be my decision, Your Honor." Schober confirmed that he understood the case against him and the district court's *Spreigl* ruling about his prior convictions, and, when asked whether he felt his counsel did a good job of representing him, responded, "Absolutely." Schober also acknowledged that he understood the rights that he would be giving up by pleading guilty.

The prosecution then reviewed the consequences of the guilty plea. Schober confirmed that he understood that he was not guaranteed release after 41 months and could remain in prison for the rest of his life. The prosecution also clarified whether Schober understood that he would be subject to lifetime conditional or supervised release:

> PROSECUTION: You understand that if you are released from prison that you will be on supervised or conditional release, do you understand that?
> SCHOBER: Yes. Yes, I do.
> PROSECUTION: And you understand that you would remain on supervised or conditional release for the rest of your life, do you understand that?
> SCHOBER: I was—I do now, yes, if that is the case. I thought it was possibly a ten-year.
> PROSECUTION: Knowing that it would be that lifetime conditional or supervised release, do you have any additional questions or do you have anything else that you need addressed about that or do you feel you fully understand that?
> SCHOBER: I understand that now that you've clarified. Thank you.

The prosecution also clarified Schober's understanding of predatory-offender registration:

4

> PROSECUTION: Do you understand that you will be required to register as a predatory offender?
> SCHOBER: Yes, I do.
> PROSECUTION: Do you understand that[,] that registration period will be for life?
> SCHOBER: I did not know that.
> PROSECUTION: Now that you do know that, do you have any additional questions or clarification that you would like on that?
> SCHOBER: No.

Schober again acknowledged that he had had enough time to discuss the case with his attorney, that he was satisfied with his attorney's representation, and that his attorney fully represented his position and his rights.

The prosecution questioned Schober about the factual basis underlying his plea to third-degree criminal sexual conduct under Minnesota Statutes section 609.344, subdivision 1(d). Schober admitted that, while performing work at the home where the victim resides, he engaged in sexual penetration with the victim. While establishing the factual basis that Schober knew or should have known that the victim was mentally impaired, Schober said he "did not know" that the victim was mentally impaired, and when asked about the victim's residence—a group home for developmentally disabled adults—Schober said that he "was not aware of what [the residents'] mental or physical status was, they never shared any HIPAA information with [him]." After an off-the-record conversation, the prosecution ultimately established the factual basis for this element through leading questions:

> PROSECUTION: Mr. Schober, I understand that you might not have seen [the victim's] medical documents or psychological evaluations, but would [you] agree that you

5

either knew or had reason to know that she was mentally
impaired?
SCHOBER: Yes.
PROSECUTION: Specifically that because of her impaired
intelligence she lacked the judgment to give reasoned consent
to sexual contact or penetration, do you agree with that?
SCHOBER: Yes.

The prosecution then established that Schober had a prior sex offense and that the present offense involved an aggravating factor supporting an upward departure, as required for a mandatory life sentence under Minnesota Statutes section 609.3455, subdivision 4(a)(2)(i) (2020). Specifically, the state established that Schober had a prior out-of-state sex-offense conviction for first-degree statutory rape and that the present offense occurred in the victim's residence, where Schober did not reside, and was thus committed within the victim's zone of privacy.

### *Motion to Withdraw Plea and Sentencing*

The district court scheduled sentencing for October 3, 2022. The week before the scheduled hearing, Schober applied for a public defender and wrote a letter requesting to discharge the attorney who had been representing him. At the October 3 hearing, Schober explained that he wanted to discharge counsel and "to be able to argue the penalty phase of the plea agreement, which was . . . the aggravating factor on Count II." He argued that there was "a complete breakdown in communication" and, in an affidavit, alleged that his lawyer had failed to respond to his communications and had failed to act diligently. The district court granted Schober's request to discharge counsel.

Schober's new attorney moved to withdraw Schober's guilty plea. Schober argued that, because of his plea lawyer's ineffective assistance of counsel, he was entitled to plea

6

withdrawal under both the manifest-injustice and the fair-and-just standards. The state opposed.

The district court denied Schober's motion for plea withdrawal. In a written order, the district court explained that Schober's plea was intelligent, accurate, and voluntary. Thus, the district court concluded that the plea was constitutionally valid. The district court also determined that Schober had not established fair-and-just reasons for withdrawing the plea because Schober "was satisfied with his representation, aware of his rights, aware of the State's case, aware of the consequences, and [did] not plead[] guilty [due] to pressure or coercion." Finally, the district court determined that the state met its burden to establish prejudice because the state would need to reassemble 14 noticed and subpoenaed witnesses, the victim is a "significantly delayed vulnerable adult who has numerous health issues" and thus may be unable to testify, and the victim and her family would "undergo significant stress and anguish should this plea be withdrawn."

Schober appeals.

## DECISION

"A defendant has no absolute right to withdraw a guilty plea after entering it." *State v. Raleigh*, 778 N.W.2d 90, 93 (Minn. 2010). But a defendant may do so if one of two standards is met. First, a defendant must be allowed to withdraw a guilty plea at any time if doing so "is necessary to correct a manifest injustice." Minn. R. Crim. P. 15.05, subd. 1. Second, the district court may allow a defendant to withdraw a plea at any time before sentencing "if it is fair and just to do so." Minn. R. Crim. P. 15.05, subd. 2. "We review a district court's decision to deny a withdrawal motion for abuse of discretion, reversing only

in the 'rare case.'" *Raleigh*, 778 N.W.2d at 97 (quoting *Kim v. State*, 434 N.W.2d 263, 266 (Minn. 1989)); *see also Campos v. State*, 816 N.W.2d 480, 485 (Minn. 2012).

Schober contends that the district court abused its discretion by denying his motion for plea withdrawal, asserting that he is entitled to such relief under both the manifest-injustice and fair-and-just standards. We address each of Schober's arguments in turn.

**I.      The district court did not abuse its discretion by determining that Schober is not entitled to plea withdrawal under the manifest-injustice standard.**

Schober maintains that his guilty plea was not valid because he received ineffective assistance of counsel and that the district court should have allowed him to withdraw his plea to correct that manifest injustice. We disagree.

A manifest injustice occurs if a plea is not constitutionally valid. *See Raleigh*, 778 N.W.2d at 94. "To be constitutionally valid, a guilty plea must be accurate, voluntary, and intelligent." *Id.* "If the defendant is represented, counsel plays a key role in ensuring that any plea is intelligent by explaining the charges, the rights to be waived, and the consequences of the plea." *Taylor v. State*, 887 N.W.2d 821, 823 (Minn. 2016). Likewise, "the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." *State v. Ecker*, 524 N.W.2d 712, 718 (Minn. 1994) (quotation omitted). For these reasons, ineffective assistance of counsel may render a guilty plea constitutionally invalid, causing a manifest injustice. *State v. Ellis-Strong*, 899 N.W.2d 531, 541 (Minn. App. 2017). "A defendant bears the burden of showing his plea was invalid." *Raleigh*, 778 N.W.2d at 94.

"We apply the *Strickland* standard to determine whether a criminal defendant received ineffective assistance of counsel in entering a guilty plea." *State v. Bell*, 971 N.W.2d 92, 106 (Minn. App. 2022), *rev. denied* (Apr. 27, 2022). To succeed, a defendant must show both (1) "that counsel's representation fell below an objective standard of reasonableness" and (2) "prejudice in the form of a reasonable probability that, but for counsel's unprofessional errors, [the defendant] would not have pleaded guilty." *Id.* (quotations omitted). "We review ineffective assistance claims with a strong presumption that counsel's performance was reasonable." *Swaney v. State*, 882 N.W.2d 207, 217 (Minn. 2016). And although we review a claim of ineffective assistance of counsel de novo, we will not set aside a district court's findings of fact unless clearly erroneous. *See Bell*, 971 N.W.2d at 106. "We may address the prongs in either order, and a claim may be disposed of on one prong without analyzing the other." *Eason v. State*, 950 N.W.2d 258, 268 (Minn. 2020).

Schober argues that his plea was unintelligent because his counsel failed to inform him of the consequences of pleading guilty and that his plea was involuntary based on his attorney's deficient performance throughout the representation. The record defeats both arguments.

### A. Schober was not prejudiced by his counsel's alleged failure to advise him regarding conditional release and predatory-offender registration.

First, Schober argues that his plea counsel's performance was objectively unreasonable because his lawyer failed to advise him that he would be subject to lifetime conditional release and lifetime predatory-offender registration.

Generally, a plea is not intelligent if the defendant is unaware of the plea's direct consequences. *See Taylor*, 887 N.W.2d at 823. But "a defendant's lack of awareness of a *collateral* consequence of a guilty plea does not render the guilty plea unintelligent and entitle a defendant to withdraw it." *Id.*

Schober's failure-to-advise claim hinges on his statements in response to questioning by the prosecution at his change-of-plea hearing. During that colloquy about the consequences of Schober's guilty plea, Schober confirmed that he understood that there was no guarantee that he would be released from prison after 41 months and that he "could remain in prison for the remainder of [his] life." Schober further acknowledged that he would be subject to conditional release and predatory-offender registration if he were released from prison. When the prosecution asked whether Schober understood that his conditional release and registration would be for life, however, Schober said that "[he] thought [conditional release] was possibly a ten-year" and that he "did not know that" predatory-offender registration would be for life. Schober relies on these two statements to argue that his counsel did not advise him about lifetime conditional release, which he asserts is a direct consequence,[2] and lifetime predatory-offender registration, which he

---

[2] This court has recognized that conditional release is generally a direct consequence of a plea "because it affects the maximum amount of prison time a defendant may serve." *Kubrom v. State*, 863 N.W.2d 88, 92 (Minn. App. 2015). Under these circumstances, however, Schober understood that his maximum term of imprisonment was life, regardless of the length of conditional release. We need not resolve whether the conditional-release term here is a direct or collateral consequence because, as explained herein, Schober's ineffective-assistance-of-counsel claim fails on the second *Strickland* prong.

10

concedes is a collateral consequence. Thus, Schober contends that his lawyer's performance was objectively unreasonable.

Assuming without deciding that counsel's performance fell below an objective standard of reasonableness, Schober cannot show prejudice. Although Schober initially expressed unawareness that his conditional release would be for life, after follow-up questioning by the state, Schober stated that he had no other questions or additional concerns he needed addressed and that he understood his lifetime conditional-release term:

> PROSECUTION: Knowing that it would be that lifetime conditional or supervised release, do you have any additional questions or do you have anything else that you need addressed about that or do you feel you fully understand that?
> SCHOBER: I understand that now that you've clarified. Thank you.

The same is true for Schober's lifetime predatory-offender registration:

> PROSECUTION: Now that you do know that, do you have any additional questions or clarification that you would like on that?
> SCHOBER: No.

On this record, there is no probability—much less a reasonable probability—that Schober would not have pleaded guilty but for his attorney's alleged failure to advise him about lifetime conditional release and lifetime predatory-offender registration. *See Bell*, 971 N.W.2d at 106. This is because Schober testified to his understanding that he would be subject to conditional release and predatory-offender registration upon release from prison. And even though Schober had the chance to discuss the lifetime conditional release and lifetime registration further, Schober declined to do so. Instead, he pleaded guilty. Even if we assume that it was the prosecution rather than Schober's counsel who informed him

that his conditional release and predatory-offender registration would be for life, the fact remains that Schober was made fully aware of those consequences before he entered his guilty plea and nonetheless chose to proceed with doing so. As a result, Schober has not shown that he was prejudiced, as required to satisfy his burden under *Strickland*. *See Bell*, 971 N.W.2d at 106.

> **B.** **Schober was not prejudiced by his counsel's alleged lack of preparation for trial.**

Second, Schober argues that his guilty plea was involuntary because he was pressured by his attorney's lack of preparation for trial.

In the affidavit Schober submitted in support of his motion to discharge counsel, Schober alleged that his attorney failed to respond to his letters and emails leading up to trial, that his lawyer failed to answer questions about trial strategy, and that his counsel failed to challenge the *Spreigl* factual basis or the legal insufficiency of the "zone of privacy" aggravating factor. On appeal, Schober relies on the allegations in his affidavit to contend that, "[d]ue to trial counsel's failure to perform with an objectively reasonable level of diligence, and trial counsel's lack of preparation for trial, [Schober] was under immense pressure to plead guilty, rendering his plea involuntary."

To begin with, because Schober's challenge appears rooted in his attorney's trial strategy, it is not reviewable. *See Andersen v. State*, 830 N.W.2d 1, 13 (Minn. 2013) (noting that counsel's alleged conduct—including that he was unprepared at trial, did not read the discovery, failed to investigate the case, and did not call exculpatory witnesses—"arguably falls within trial strategy and therefore is not reviewable"). But even if we accept that

12

Schober's allegations of deficient performance are true and constitute objectively unreasonable performance, Schober has not established that he would have gone to trial but for the alleged deficiencies. *See Bell*, 971 N.W.2d at 106.

Schober contends that, had he "not discovered trial counsel's lack of preparation for the planned—and underway—jury trial, he would have proceeded to trial without pleading guilty." But Schober has identified no record evidence to support this assertion. Schober did not allege that his plea counsel's alleged deficiencies influenced his decision to plead guilty in his affidavit, nor did Schober testify to this in support of his motion to withdraw his guilty plea. Likewise, our review of the record does not support Schober's suggestion that he discovered his counsel's alleged deficiencies between June 14, 2022—the day trial was to begin, when Schober stated that he did not wish to accept the state's plea offer—and the following afternoon, when Schober formally accepted the offer.

To the contrary, as the district court found and Schober does not dispute, Schober had multiple opportunities to proceed to trial but, "[a]fter extensive counsel, . . . affirmatively stated the decision to plead guilty was his, and . . . admitted to the allegations." Schober did not inform the district court or the prosecution that he was concerned about his counsel's lack of preparation. To the contrary, Schober testified that he was satisfied with his attorney's representation. On this record, we conclude there is no reasonable probability that Schober would have gone to trial but for counsel's alleged errors. Schober therefore has not met his burden to establish prejudice.

In sum, Schober has not met his burden to show that his guilty plea was invalid due to ineffective assistance of counsel. *See Bell*, 971 N.W.2d at 106. Accordingly, we

conclude that the district court did not abuse its discretion by denying Schober's motion for plea withdrawal under the manifest-injustice standard.

**II.     The district court did not abuse its discretion by determining that Schober is not entitled to plea withdrawal under the fair-and-just standard.**

In the alternative, Schober argues that the district court abused its discretion by denying his plea withdrawal motion because he advanced fair-and-just reasons to withdraw his guilty plea.[3] We are not persuaded.

The fair-and-just standard requires district courts to give "due consideration" to two separate factors: (1) the "reasons advanced . . . in support of the motion" and (2) "any prejudice the granting of the motion would cause the prosecution." Minn. R. Crim. P. 15.05, subd. 2; *accord Raleigh*, 778 N.W.2d at 97. The defendant bears the burden of advancing reasons to support plea withdrawal, and the state bears the burden of showing prejudice. *Raleigh*, 778 N.W.2d at 97.

In its thorough and well-reasoned order, the district court reviewed the record and concluded that Schober's plea was intelligent, voluntary, and accurate. The district court specifically determined that the "record is crystal clear" that Schober "understood the terms of the plea agreement, he understood his rights, and he understood the charges against

---

[3] Schober also asserts, without analysis, that the state did not establish that granting the motion would prejudice the prosecution. *See* Minn. R. Crim. P. 15.05, subd. 2. "An issue raised without 'argument or citation to legal authority in [its] support' is forfeited." *State v. Mrozinski*, 971 N.W.2d 233, 238 n.2 (Minn. 2022). And even if we consider this claim on the merits, we discern no abuse of discretion in the district court's prejudice determination as to the prosecution's case. The state satisfied its burden to establish prejudice based on its need to reassemble 14 noticed and subpoenaed witnesses and the possibility that the mentally impaired victim would be unable to testify.

14

him"; that there was an adequate factual basis even though the prosecution used leading questions; and that "the record and Pre-Sentence Investigation show that [Schober] was guilty of the offense and provided the opportunity for release after 41 months because he took advantage of the plea agreement." The district court determined that, based on the record, Schober "was satisfied with his representation, aware of his rights, aware of the State's case, aware of the consequences, and [did] not plead[] guilty [due] to pressure or coercion." And the district court found that Schober's "guilty plea was because he was guilty of the offense." As a result, the district court ruled that, "[w]hile [Schober] need not meet the manifest-injustice standard to withdraw his plea, he has not met his burden under the fair and just standard either."

Schober maintains that, because his guilty plea was not intelligent, voluntary, and accurate, the district court abused its discretion by determining that there were not fair-and-just reasons for granting plea withdrawal. This argument is unavailing.

Schober posits that "[t]he lack of understanding [he] demonstrated regarding the consequences of his plea, render the plea involuntary and unintelligent, and thus, invalid." But this claim merely repackages Schober's ineffective-assistance-of-counsel argument. As analyzed above, the record shows that Schober ultimately knew before choosing to plead guilty that his plea would lead to lifetime conditional release and lifetime predatory-offender registration. Schober still affirmatively chose to plead guilty despite multiple opportunities to go to trial. For that reason, the district court did not abuse its discretion by determining that Schober's plea was intelligent and voluntary.

15

Schober also contends that, because the factual basis for an element—that Schober knew or should have known that the victim was mentally impaired—was established through leading questions, the district court abused its discretion by determining that his plea was accurate.[4] Schober's position misses the mark.

A proper factual basis is established if there are "sufficient facts on the record to support a conclusion that defendant's conduct falls within the charge to which he desires to plead guilty." *Kelsey v. State*, 214 N.W.2d 236, 237 (Minn. 1974). Although Minnesota jurisprudence disfavors the use of leading questions to establish the factual basis for a guilty plea, appellate precedent does not forbid their use altogether. *See, e.g.*, *Raleigh*, 778 N.W.2d at 94-96 (concluding that the guilty plea was accurate and explaining that, although counsel used leading questions, "the factual basis for [the] plea [was] sufficient, despite its disfavored format").

In its order, the district court explained that, while Schober initially "stat[ed] that he was not aware of the victim's mental status due to not having received HIPAA information, he was clear in stating that he knew or should have known that the victim was mentally impaired." The district court also noted that Schober "corrected the factual basis when necessary" and "admitted to all the elements required for a conviction." The district court

---

[4] Schober also asserts that the written plea petition incorrectly stated that he would plead to both counts I and II. But the transcripts show that Schober was informed before and after completing the plea petition that he would plead to count II; that the district court corrected the error on the record and Schober confirmed that the corrected petition matched his understanding of the agreement; and that Schober ultimately pleaded guilty to only count II. The initial error in the written plea petition, which the district court quickly corrected on the record, does not undermine the accuracy of Schober's plea or present a fair-and-just reason supporting plea withdrawal.

therefore determined, "[t]hough the questions were leading, [that Schober] admitted to the elements of the offense and [that] the record contains sufficient evidence to support his plea." Because the district court carefully evaluated the prosecution's use of leading questions and determined that the factual basis was sufficient, the district court did not abuse its discretion in concluding that the plea was accurate. *See Raleigh*, 778 N.W.2d at 94-96.

In sum, because Schober's plea was valid and the district court did not abuse its discretion by determining that Schober failed to advance fair-and-just reasons to support plea withdrawal, the district court did not err in denying Schober's motion to withdraw his guilty plea.

**Affirmed.**