STATE of Minnesota, Respondent,

v.

Adam Allan LAFOUNTAIN, Appellant.

A16-1754

Court of Appeals of Minnesota.

Filed August 28, 2017

Review Denied Oct. 25, 2017

442

Lori Swanson, Attorney General, Karen B. McGillic, Assistant Attorney General, St. Paul, Minnesota; and Brett A. Corson, Fillmore County Attorney, Preston, Minnesota (for respondent).

Cathryn Middlebrook, Chief Appellate Public Defender, Jennifer Workman Jesness, Assistant Public Defender, St. Paul, Minnesota (for appellant).

Considered and decided by Bratvold, Presiding Judge; Schellhas, Judge; and Jesson, Judge.

## OPINION

JESSON, Judge

Appellant Adam LaFountain appeals his felony conviction, arguing that the requirement of the Minnesota predatory-offender-registration statute that he inform law enforcement of his address change violates his Fifth Amendment privilege against self-incrimination. Because the predatory-offender-registration act is not a penal statute, it does not implicate the constitutional privilege against self-incrimination. Further, because LaFountain's statements to the investigator were made when he was not in custody, they are not covered within the scope of that privilege. We therefore affirm.

## FACTS

LaFountain, who was convicted of third-degree criminal sexual conduct in 2006, was required to register as a predatory offender under Minnesota law. *See* Minn. Stat. § 243.166, subd. 1b(a)(1)(iii). He completed the necessary registration paperwork at that time. On October 15, 2015, however, LaFountain, who had a history of violating conditions of release, was convicted of felony failure to register. *See id.*, subd. 5(a). He received a 24-month stayed sentence and was required to continue to fulfill registration requirements.

Shortly thereafter, on November 9, 2015, Fillmore County sheriff's deputies confirmed with LaFountain's former landlord that, three weeks earlier, he had moved from the address he had listed on the predatory-offender registry. A deputy visited LaFountain's employer listed on the registry and learned that LaFountain

had not been employed there for two weeks.

On November 17, 2015, LaFountain entered the law enforcement center in Preston and told a sheriff's investigator that he needed to update his predatory-offender-registration information. LaFountain accompanied the investigator to a computer to access the registry. Examining the dates in the system, the investigator noticed that LaFountain appeared to have moved from his listed address more than a few days earlier. He mentioned this to LaFountain, who responded that he had been evicted from that address and was supposed to leave on October 16, but he still had some items there and had not moved until four or five days earlier. The investigator told LaFountain that a report had been forwarded to the county attorney's office, based on possible noncompliance with registration due to his failure to notify law enforcement of his address change at least five days before moving to that address. *See* Minn. Stat. § 243.166, subd. 3(b).

The state charged LaFountain with violating the predatory-offender-registration statute by failing to timely notify law enforcement of his change of address. LaFountain moved to suppress evidence of his statements on his predatory-offender-registration paperwork to the investigator, arguing that they were made in violation of his Fifth Amendment privilege against self-incrimination.

At an evidentiary hearing on the motion, the investigator testified that LaFountain volunteered that he knew that he was supposed to change his address in the system at least five days before moving to a new address. The investigator did not *Mirandize* LaFountain because no arrest was made. *See Miranda v. Arizona,* 384 U.S. 436, 444-45, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966).

LaFountain testified that he had provided his new address because it was "either supply the information or be charged criminally." He acknowledged that he understood that, if he did not register, he could be charged with felony failure to register. He testified that "life doesn't happen by the book with[in] five days," and he believed he was doing the right thing by coming in to update his registration.

The district court issued an order denying the motion to suppress. The district court held that LaFountain's statements in his Bureau of Criminal Apprehension file acknowledging that he understood the registration requirement, as well as his statements to the investigator, did not violate his Fifth Amendment privilege against self-incrimination. The district court concluded that the predatory-offender-registration statute was civil and regulatory, rather than penal, so that the two elements required for the Fifth Amendment to apply—compulsion and incrimination—were not present, and that LaFountain's statements were not protected by the Fifth Amendment.

After LaFountain waived his right to a jury trial, the district court found him guilty of failure to register as a predatory offender and sentenced him to a presumptive 30-month sentence. This appeal follows.

## ISSUES

I. Is the predatory-offender-registration statute a civil and regulatory statute, rather than a penal statute, so that LaFountain's statements relating to its registration requirements do not give rise to a Fifth Amendment privilege against self-incrimination?

II. Are LaFountain's out-of-custody statements made to the investigator

protected by a Fifth Amendment privilege?

## ANALYSIS

The Fifth Amendment to the United States Constitution guards against self-incrimination. It provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. Amend. V; *see also* Minn. Const. art. I, § 7 (providing the same protection against self-incrimination). As the Supreme Court explained, the government must establish guilt "by evidence independently and freely secured, and may not by coercion prove a charge against an accused out of his own mouth." *Malloy v. Hogan*, 378 U.S. 1, 8, 84 S.Ct. 1489, 1493, 12 L.Ed.2d 653 (1964). As a result, the Fifth Amendment privilege is the "essential mainstay" of the American system of criminal prosecution. *Id.* at 7, 84 S.Ct. at 1493. But the privilege only applies in a "criminal case." *Id.* (quotation omitted).

## I. The predatory-offender-registration statute is not penal in nature.

Here, LaFountain argues that Minnesota Statutes section 243.166, which requires him to register certain information and to notify law enforcement at least five days before a change in his address, compels him to incriminate himself in violation of the Fifth Amendment. He argues that when he signed paperwork acknowledging the registration requirements and told the investigator that he had failed to timely notify law enforcement of his address change, he was compelled to provide information that incriminated him in a criminal proceeding. *See* Minn. Stat. § 243.166, subds. 4(a), 3(b).

But the question is not whether LaFountain's answers incriminated him in a criminal proceeding. Rather, the question is whether the statute that requires the answers—the predatory-offender-registration statute—is penal in nature. Whether a statute is civil or punitive in nature involves an issue of statutory construction. *Seling v. Young*, 531 U.S. 250, 261, 121 S.Ct. 727, 734, 148 L.Ed.2d 734 (2001). Statutory interpretation presents a question of law, which this court reviews de novo. *Boutin v. LaFleur*, 591 N.W.2d 711, 714 (Minn. 1999). And when we review constitutional challenges to statutes, we presume that the statutes are constitutional and exercise our power to declare statutes unconstitutional "with extreme caution and only when absolutely necessary." *State v. Fitch*, 884 N.W.2d 367, 373 (Minn. 2016) (quotation omitted). The party challenging a statute's constitutionality "bears the very heavy burden" to demonstrate beyond a reasonable doubt that it is unconstitutional. *Id.* (quotation omitted).

We address LaFountain's constitutional arguments by reviewing the history of the predatory-offender-registration statutes, as well as caselaw that addresses constitutional challenges to predatory-offender-registration statutes in other contexts. Based upon this review, we conclude that the statute is civil and regulatory, not penal, because it does not have the fundamental attributes of punishment set out by the United States Supreme Court in *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-69, 83 S.Ct. 554, 567-68, 9 L.Ed.2d 644 (1963).

### *Predatory-offender-registration statutes have a significant history*

The use of registration systems to track criminal offenders released to the community dates back to the 1920s. Lori McPherson, *The Sex Offender Registration and Notification Act (SORNA) at 10 Years: History, Implementation, and the Future*, 64 Drake L. Rev. 741, 746 (2016). By 1996, all states had enacted predatory-offender-registration statutes. *Id.* at 747. These

statutes generally serve two purposes. *Id.* at 745. First, a continually updated database of information on convicted predatory offenders improves law enforcement's ability to supervise offenders and investigate new offenses. *Id.* Second, community notification allows members of the public to protect themselves from risks in the community. *Id.* In 2003, the United States Supreme Court, upholding an Alaska predatory-offender-registration act, held that such registration statutes are nonpunitive and therefore may be applied retroactively to offenders who have previously been convicted without violating the Ex Post Facto Clause of the United States Constitution. *Smith v. Doe*, 538 U.S. 84, 105-06, 123 S.Ct. 1140, 1154, 155 L.Ed.2d 164 (2003); *see discussion*, Wayne R, LaFave, 1 *Substantive Criminal Law* § 1.7(b), at 62 n.12 (2d ed. 2003 & Supp. 2016-17).[1]

The Minnesota legislature enacted its predatory-offender-registration act in 1991. *See* 1991 Minn. Laws ch. 285, § 3, at 1325-26. Under the version of that statute at issue here, a person who is required to register must report his or her primary and secondary addresses; the addresses of all Minnesota property owned, rented, or leased; addresses of all employment locations; the schools where the person is enrolled; and identifying information for the person's vehicles. Minn. Stat. § 243.166, subd. 4a(a)(1)-(6). This information must be reported within five days of the time it becomes applicable, and the person must immediately inform law enforcement of any changes. *Id.*, subd. 4a(b). And when a person has a new primary address, the person must give written notice of the new address at least five days before moving to that address. *Id.*, subd. 3(b). If a person no longer has a primary address, the person must inform law enforcement within 24 hours about the location where he or she is staying. *Id.*, subd. 3a. A person who knowingly violates the registration requirements or intentionally provides false information to law enforcement or a corrections agent is subject to felony prosecution. *Id.*, subd. 5(a).

### The predatory-offender-registration statute is nonpunitive in nature

 LaFountain argues that the predatory-offender-registration act implicates the Fifth Amendment privilege against self-incrimination because it is criminal in nature, rather than civil and regulatory. To examine this issue, we apply the framework articulated by the United States Supreme Court for assessing whether a statute is penal or civil for purposes of determining whether the Fifth Amendment applies to its violation. *See Mendoza-Martinez*, 372 U.S. at 168-69, 83 S.Ct. at 567-68. Under that framework, the court examines the following factors:

[1] Whether the sanction involves an affirmative disability or restraint,

[2] whether it has historically been regarded as a punishment,

[3] whether it comes into play only on a finding of *scienter*,

[4] whether its operation will promote the traditional aims of punishment—retribution and deterrence,

[5] whether the behavior to which it applies is already a crime,

[6] whether an alternative purpose to which it may rationally be connected is assignable for it, and

---

1. At the federal level, after previous regulation in this area, Congress enacted the Sex Offender Registration and Notification Act (SORNA), which created a national sex-offender registry, with a federal crime of "failure to register" punishable by up to ten years' imprisonment. *See* 42 U.S.C. §§ 16901-16929 (2006 & Supp. 2009); 18 U.S.C. § 2250(a) (2006).

[7] whether it appears excessive in relation to the alternative purpose assigned. *Id.* (footnotes omitted).

In assessing whether the registration statute is penal in nature under *Mendoza-Martinez*, we are guided by three cases that applied this framework to predatory-offender statutes: *Boutin v. LaFleur*, 591 N.W.2d 711; *Kaiser v. State*, 641 N.W.2d 900 (Minn. 2002); and *Smith v. Doe*, 538 U.S. 84, 123 S.Ct. 1140. While none of these cases addressed a challenge based on a Fifth Amendment privilege, as La-Fountain presents here, they did address whether the statutes were penal in nature based on arguments regarding the presumption of innocence and the right to be free from retroactive punishment as forbidden by the Ex Post Facto Clause.

In 1999, the Minnesota Supreme Court applied these factors to the predatory-offender-registration statute when a defendant argued that the registration requirement violated his constitutional right to a presumption of innocence. *Boutin*, 591 N.W.2d at 716-17. The supreme court noted that when the legislature adopted the statute, it did not address the question of whether it was intended to be punitive or regulatory. *Id.* at 717. Applying the *Mendoza-Martinez* factors, the supreme court determined that the registration statute did not require an affirmative disability or restraint, but only registration; that such statutes had not historically been regarded as punishment; that the statute did not promote the traditional aims of punishment because it did not involve confinement and was not intended to exact retribution; and that its primary purpose was "to create an offender registry to assist law enforcement with investigation." *Id.* (citing *Mendoza-Martinez*, 372 U.S. at 168-69, 83 S.Ct. at 567-68).

Three years later, the supreme court cited the *Mendoza-Martinez* factors in a slightly different context, holding that the statutory duty to register as a predatory offender was a collateral consequence of the offender's guilty plea, so that failure to advise him of that consequence did not constitute a manifest injustice, justifying plea withdrawal. *Kaiser*, 641 N.W.2d at 905, 907. The supreme court concluded that the registration statute was not punitive, but rather a civil/regulatory scheme, which required a specific class of offenders to provide law enforcement with information to assist in monitoring their whereabouts. *Id.* at 905-06 (citing *Mendoza-Martinez*, 372 U.S. at 168-69, 83 S.Ct. at 567-68; *Boutin*, 591 N.W.2d at 717). The court likened the registration statute to prohibitions on possession of firearms by convicted felons or the revocation of driving privileges after convictions of driving under the influence, which are imposed to promote public safety. *Id.* at 905-06.

We also find instructive the United States Supreme Court's decision upholding an Alaska predatory-offender-registration act, concluding it was nonpunitive and, as a result, could be applied retroactively to offenders who have previously been convicted without violating the Ex Post Facto Clause of the United States Constitution. *Smith*, 538 U.S. at 105-06, 123 S.Ct. at 1154. The Supreme Court applied the *Mendoza-Martinez* factors, noting that the registration requirements did not resemble historical punishment, imposed no physical restraint, and had a rational connection to the nonpunitive purpose of public safety. *Id.* at 97-103, 123 S.Ct. at 1149-1152. And the Supreme Court expressed that "[i]nvoking the criminal process in aid of a statutory regime does not render the statutory scheme itself punitive." *Id.* at 96, 123 S.Ct. at 1149.[2]

---

**2.** The registration statute in *Smith* required

prompt registration of an offender's personal

While we do not underestimate the critical importance of the Fifth Amendment to our justice system, we do not discern that its unique role is so different from that of the fundamental right to the presumption of innocence or the right to be free from retroactive punishment forbidden by the Ex Post Facto Clause, that any distinction justifies a different application of the *Mendoza-Martinez* framework. *See Smith*, 538 U.S. at 105, 123 S.Ct. at 1154; *Boutin*, 591 N.W.2d at 717. The registration statute does not directly involve confinement. Retribution is not its aim. It does not attempt to punish so much as to protect the public. We recognize the serious collateral consequences of registration, which may affect an offender's ability to relocate, obtain employment, and other life events. *Taylor v. State*, 887 N.W.2d 821, 825 (Minn. 2016). But these consequences do not rise to the level of concrete physical restraint. *See id.* In summary, as the supreme court noted in *Kaiser*, the policy behind the statute is that "society has the right to know of [predatory offenders'] presence not in order to punish them, but in order to protect itself." 641 N.W.2d at 905 (quotation omitted). Given this policy and the application of the *Mendoza-Martinez* factors as in-

formed by *Boutin*, *Kaiser*, and *Smith*, we conclude that the registration statute is not punitive.

LaFountain argues, however, that these prior interpretations of predatory-offender-registration statutes have been superseded by the Minnesota Supreme Court's reasoning in *State v. Jones*, 729 N.W.2d 1 (Minn. 2007). In *Jones*, the supreme court held that Minnesota authorities had jurisdiction to prosecute an enrolled tribal member for the offense of failure to register as a predatory offender when that offense was committed on that member's reservation. *Id.* at 12. The court examined the issue through the lens of Public Law 280, which authorizes the state to exercise broad criminal, but limited civil, jurisdiction over certain areas of Indian country. *Id.* at 4 (citations omitted). And the court held that, for this purpose, the registration statute was "criminal/prohibitory," allowing its enforcement on the reservation, rather than "civil/regulatory," prohibiting such enforcement. *Id.* at 8-9. In so doing, the *Jones* court did not apply the *Mendoza-Martinez* factors, but instead applied the federally required *Cabazon/Stone* test. *Id.* at 11 & n.9.[3]

information with the department of corrections if he was incarcerated or with local police if he was at liberty. *Smith*, 538 U.S. at 90, 123 S.Ct. at 1145 (citing Alaska Stat. § 12.63.010(a), (b) (2000)). Similar to the Minnesota statute, an offender was required to notify law enforcement "by the next working day following [a] change" of address. *See* Alaska Stat. § 12.63.010(c) (2000). We note that, following *Smith*, the Alaska Supreme Court held that, under that state's constitution, the registration act upheld in *Smith* was so punitive in purpose or effect as to overcome the legislature's civil intent, so that its application to a sex offender who was convicted and sentenced before its enactment violated the state constitution's ex post facto clause. *Doe v. State*, 189 P.3d 999, 1018-19 (Alaska 2008). But neither party in this case has cited the Alaska Supreme Court's ruling,

which has no binding effect on Minnesota courts. *See In re Estate of Holmberg*, 823 N.W.2d 875, 880 (Minn. App. 2012) (noting that "other states' interpretations of a uniform or similar law are not binding"), *review denied* (Minn. Nov. 27, 2012). And although LaFountain mentions the Minnesota Constitution in his brief, he based his arguments only on the United States Constitution. *See, e.g.*, *State v. Johnson*, 811 N.W.2d 136, 146 n.2 (Minn. App. 2012) (addressing only the Fifth Amendment when appellant mentioned article I, section 7, of the Minnesota Constitution in his brief, but raised only Fifth-Amendment arguments), *review denied* (Minn. Mar. 28, 2012).

**3.** The *Cabazon/Stone* test requires evaluating whether a law's intent is " 'generally to prohibit certain conduct,' " in which case it is

LaFountain urges this court to apply the reasoning in *Jones* to conclude that the Minnesota predatory-offender-registration statute constitutes a criminal statute, to which the Fifth Amendment privilege against self-incrimination applies. We decline to do so. First, the supreme court expressed in *Jones* that its holding was confined to the issue of whether the registration statute was "criminal/prohibitory," rather than "civil/regulatory" for the purpose of the *Cabazon/Stone* test. *Id.* at 5. It distinguished that issue from the consideration of whether the statute is "punitive" under *Boutin* and *Kaiser. See id.* at 11. The court specifically stated that " 'criminal/prohibitory' for the purposes of the *Cabazon/Stone* test is substantively different from 'punitive' for the purposes of the issues raised by *Boutin* and *Kaiser*—respectively, the constitutional guarantee of due process and the right to withdraw a guilty plea." *Id.*[4] The court continued,

We acknowledge that our use in *Boutin* and *Kaiser* of the terms "punitive"—which we used interchangeably with "criminal"—and "civil, regulatory" could cause confusion in our analysis under the *Cabazon/Stone* test, which distinguishes conduct that is "criminal/prohibitory" from that which is "civil/regulatory." But "punitive" is not the same as "prohibitory," and the definition of "regulatory" under the [*Mendoza-Martinez*] analysis of *Boutin* and *Kaiser* does not

have the same meaning as "regulatory" employed by Pub. L. 280 and *Cabazon. Id.*

In addition, the supreme court recently reiterated its determination that the predatory-offender-registration statute is not a penal statute. *Taylor*, 887 N.W.2d at 826. In *Taylor*, the supreme court declined to overrule *Kaiser* and concluded that a defense attorney's failure to advise a defendant about predatory-registration requirements before he enters a guilty plea does not violate his right to effective assistance of counsel. *Id.* (rejecting argument that *Kaiser* was no longer good law based on *Padilla v. Kentucky*, 559 U.S. 356, 373-74, 130 S.Ct. 1473, 1486, 176 L.Ed.2d 284 (2010), which held that defense counsel must provide a noncitizen defendant advice about the potential for deportation). The supreme court noted that predatory-offender registration involves a less severe penalty than deportation, recognizing that deportation is punitive, but offender registration is designed to protect society. *Id.* at 825. In so doing, it quoted the United States Supreme Court's statement in *Smith* that the Alaska sex-offender-registration law was " 'nonpunitive,' " and it further observed, "This language supports what we said in *Kaiser* about predatory-offender registration in Minnesota: that it is 'civil and regulatory, and not penal.' " *Id.* at 826 (quoting *Smith*, 538 U.S. at 92, 105, 123 S.Ct. at 1146, 1153-54; *Kaiser*, 641

criminal/prohibitory, or whether the law " 'generally permits the conduct at issue, subject to regulation,' " in which case it is " 'civil/regulatory.' " *State v. Stone*, 572 N.W.2d 725, 729 (Minn. 1997) (quoting *California v. Cabazon Band of Mission Indians*, 480 U.S. 202, 209, 107 S.Ct. 1083, 1088, 94 L.Ed.2d 244 (1987)).

4. The requirements for predatory-offender registration have changed since *Kaiser* and *Boutin*, broadening the number of offenders subject to registration, as well as the manner

and amount of disclosure to the public. *Jones*, 729 N.W.2d at 10. But these changes do not substantially impact the *Mendoza-Martinez* factors relied upon by the court in *Boutin* and *Kaiser*. And the fact that since *Boutin* and *Kaiser*, the registration requirements have become more strict, did not alter the characterization of the predatory-offender-registration statute as nonpunitive in *Taylor*, 887 N.W.2d at 826, even though offenders who fail to comply with registration requirements may be subject to felony prosecution.

N.W.2d at 905). Given this recent affirmation of *Kaiser*, we decline to conclude that the supreme court's interpretation of predatory-offender-registration statutes in *Kaiser* and *Boutin* have been superseded by *Jones*.

In addition to urging this court to follow the *Jones* reasoning, LaFountain contends that *Kaiser* and *Taylor* are inapplicable because they dealt with a due-process issue relating to a guilty-plea withdrawal, and not a Fifth Amendment challenge raised in a pre-trial motion to suppress. But this distinction is not material because addressing the issue in either context requires the same process of examining the *Mendoza-Martinez* factors to determine whether the registration statute creates a penal, rather than a regulatory, scheme. *See Kaiser*, 641 N.W.2d at 905; *Boutin*, 591 N.W.2d at 717.

Finally, LaFountain maintains that this statute is similar to that deemed unconstitutional in *Albertson v. Subversive Activities Control Bd.*, 382 U.S. 70, 79-80, 86 S.Ct. 194, 199, 15 L.Ed.2d 165 (1965). In *Albertson*, the United States Supreme Court struck down as unconstitutional a statute requiring members of the Communist Party of the United States to register with the government, holding that the statute violated their Fifth Amendment privilege against self-incrimination at a time when members of the Communist Party were subject to prosecution under federal law. *Id.* But unlike the law at issue in *Albertson*, the predatory-offender-registration statute does not impose a requirement of disclosure that is mainly designed to expose current criminal activity. Rather, its primary purpose is to inform law enforcement of the location of persons required to register. *See Taylor*, 887 N.W.2d at 826; *Kaiser*, 641 N.W.2d at 906-07. In many cases, an offender's reporting of his current address does not implicate inherently illegal activity.

The United States Supreme Court has recognized that determining whether a statute violates the privilege against self-incrimination involves balancing the public need for protection against an individual's claim to constitutional protection; "neither interest can be treated lightly." *California v. Byers*, 402 U.S. 424, 427, 91 S.Ct. 1535, 1537, 29 L.Ed.2d 9 (1971). The Minnesota Supreme Court has emphasized that the registration statute reflects a policy that society has the right to know the location of predatory offenders, not in order to punish them, but to protect the public. *Taylor*, 887 N.W.2d at 826; *Kaiser*, 641 N.W.2d at 905-06; *cf. People v. Leroy*, 357 Ill.App.3d 530, 293 Ill.Dec. 459, 828 N.E.2d 769, 783 (2005) (concluding that balancing the purpose of predatory-offender-registration statute against an offender's claim asserting a privilege against self-incrimination favors the public interest and weighs against applying the privilege).

We recognize that registration and its continuing reporting requirements may in some cases operate as a sanction and as a deterrent to future criminal behavior, one of the traditional aims of punishment. *See Mendoza-Martinez*, 372 U.S. at 168-69, 83 S.Ct. at 567-68. But although the possibility of prosecution exists depending upon what information is disclosed, "under our holdings, the mere possibility of incrimination is insufficient to defeat ... strong policies in favor of ... disclosure." *Byers*, 402 U.S. at 428, 91 S.Ct. at 1538. Given the important public policy behind the predatory-offender-registration statute, we conclude it is not a penal statute, and it does not implicate the Fifth Amendment privilege against self-incrimination.

## II. LaFountain's voluntary statements to the investigator, which were made when he was not in custody, do not implicate the Fifth Amendment.

Alternatively, LaFountain argues that the privilege against self-incrimination applies to his situation because the registration statute compelled him to provide information or face a criminal charge for failing to do so, and his answers to the investigator incriminated him for the purposes of a registration violation. *See* Minn. Stat. § 243.166, subd. 5 (providing criminal penalty for failure to follow registration requirements); *cf. Johnson v. Fabian*, 735 N.W.2d 295, 309 (Minn. 2007) (holding that the extension of inmates' incarceration time for refusal to admit to sexual offenses in sex-offender treatment violated Fifth Amendment privilege against self-incrimination). But even if we were to conclude that the registration statute is a penal statute, we would reject this argument. For a Fifth Amendment privilege to apply, statements must both be compelled and present an appreciable risk of incrimination. *Id.* at 299. While conditions of both compelled speech and a risk of incrimination may be present in other settings involving registration and questioning, LaFountain is unable to establish that his statements concerning registration were compelled because he made them voluntarily, when he was he was not in custody.

"When the government does nothing to compel a person who is not in custody to speak or to remain silent ... the voluntary decision to do one or the other raises no Fifth Amendment issue." *State v. Borg*, 806 N.W.2d 535, 543 (Minn. 2011) (citation omitted). In *Borg*, the Minnesota Supreme Court held that during the state's case-in-chief in a criminal trial, the state may introduce a defendant's failure to respond to a prearrest, pre-*Miranda* letter from police requesting an in-

terview. *Id.* Here, LaFountain came into the law enforcement center of his own accord. He was not arrested and therefore was not given *Miranda* warnings. *See Rhode Island v. Innis*, 446 U.S. 291, 300, 100 S.Ct. 1682, 1689, 64 L.Ed.2d 297 (1980) (stating that *Miranda* applies "whenever a person in custody" is subjected to interrogation). And during that visit, he voluntarily informed the investigator about his change of address and the time it had occurred. *Cf. Minnesota v. Murphy*, 465 U.S. 420, 429, 440, 104 S.Ct. 1136, 1143, 1149, 79 L.Ed.2d 409 (1984) (holding that a probationer's voluntary statements to his probation officer, when the probationer did not claim the privilege against self-incrimination, were not compelled within the meaning of the Fifth Amendment). We therefore conclude that LaFountain's statements to the investigator are not compelled for Fifth-Amendment purposes, and his voluntary decision to speak to the investigator does not implicate a privilege against self-incrimination.

### DECISION

The Minnesota predatory-offender-registration statute is not a penal statute. Therefore, the registration requirements of that statute do not implicate the Fifth Amendment privilege against self-incrimination, and LaFountain was not entitled to the protection of that privilege when he provided law enforcement with required registration information, including information on his change of address. Further, because the investigator did not compel LaFountain, who was not in custody, to provide information regarding his address change, LaFountain's voluntary statements to the investigator are not subject to the Fifth Amendment.

**Affirmed.**