Bradford Colbert, Legal Assistance to Minnesota Prisoners, St. Paul, Minnesota (for appellant)
Keith Ellison, Attorney General, Angela Helseth Kiese, Assistant Attorney General, St. Paul, Minnesota (for respondent)
Considered and decided by Connolly, Presiding Judge; Bjorkman, Judge; and Florey, Judge.
CONNOLLY, Judge *428 Appellant challenges the district court's grant of summary judgment in favor of respondent, arguing that the district court erred in concluding that requiring her to register as a predatory offender did not violate her substantive and procedural due-process rights and the separation-of-powers doctrine. We affirm.
FACTS
In April 2014, appellant Elverna Marie Bedeau went into her mother's apartment, assaulted her, would not allow her mother to leave the apartment, and physically blocked the door. Bedeau was charged with second-degree assault pursuant to Minn. Stat. § 609.222, subd. 1 (2014), false imprisonment pursuant to Minn. Stat. § 609.255, subd. 2 (2014), domestic assault pursuant to Minn. Stat. § 609.2242, subd. 1(2) (2014), and fifth-degree assault pursuant to Minn. Stat. § 609.224, subd. 1(2) (2014). Bedeau waived her right to contest whether probable cause supported the charges. The prosecutor filed an amended complaint adding a count of third-degree assault pursuant to Minn. Stat. § 609.223, subd. 1 (2014).
Bedeau pleaded guilty to one count of third-degree assault and the other charges were dismissed. During the plea hearing, Bedeau's attorney stated, "[G]iven the false imprisonment charge and our acknowledgement of probable cause on it she is required to register as a predatory offender." During sentencing, the district court again informed Bedeau that she was required to register as a predatory offender for a period of ten years and she acknowledged that she understood the registration requirement. Bedeau also signed a Minnesota predatory-offender-court-notification form indicating she understood that it was her duty to register as a predatory offender.
The Minnesota Bureau of Criminal Apprehension (BCA) learned of Bedeau's registration offense when she filed a change-of-registration-information form in November 2014. Bedeau first filed an initial-predatory-offender-registration form in May 2015, after the BCA sought the form. Bedeau has been in compliance since that time. Bedeau's current predatory registration end date is June 21, 2027 (or ten years from the date of her last release from incarceration).
In June 2017, Bedeau sued respondent Drew Evans, in his official capacity as the superintendent of the BCA, alleging that requiring her to register as a predatory offender based on a dismissed charge violated her constitutional right to due process and the separation-of-powers doctrine. Bedeau requested a declaratory judgment and injunctive relief. Evans filed *429 a motion to dismiss and for summary judgment. Following a hearing, the district court granted summary judgment to Evans and denied Bedeau's request for declaratory judgment and injunctive relief. Bedeau appeals.
ISSUES
I. Did the district court err in determining that Bedeau's substantive due-process rights were not violated?
II. Did the district court err in determining that Bedeau's procedural due-process rights were not violated?
III. Did the district court err in determining that the registration statute does not violate the separation-of-powers doctrine?
ANALYSIS
A motion for summary judgment shall be granted when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Minn. R. Civ. P. 56.01. "On appeal from summary judgment, we review whether any genuine issues of material fact exist and whether the district court erred in its application of the law." Phillips v. State , 725 N.W.2d 778, 782 (Minn. App. 2007), review denied (Minn. Mar. 28, 2007). Because the material facts in this case are undisputed, we review de novo the district court's legal conclusions. Id.
Minnesota law requires registration for certain offenders who are charged with a predatory offense, such as false imprisonment, even if convicted of another offense "arising out of the same set of circumstances." Minn. Stat. § 243.166, subd. 1b(a)(2) (2018). As a result of Bedeau's assault conviction in 2014, she was required to register as a predatory offender. See id. In State v. Lopez , 778 N.W.2d 700, 704 (Minn. 2010), the supreme court recognized that the registration statute mandates registration for offenders charged with, but not necessarily convicted of, predatory offenses to "ensure that true predatory offenders cannot plead out of the registration requirements ...."
Bedeau argues that the predatory-offender registration statute is unconstitutional because it violates her right to due process and the separation-of-powers doctrine. The constitutionality of a statute is a question of law that appellate courts review de novo. State v. Ness , 834 N.W.2d 177, 181 (Minn. 2013) (quoting Soohoo v. Johnson , 731 N.W.2d 815, 821 (Minn. 2007) ). Appellate courts exercise their power to declare statutes unconstitutional "with extreme caution and only when absolutely necessary." Boutin v. LaFleur , 591 N.W.2d 711, 714 (Minn. 1999) (citing In re Haggerty , 448 N.W.2d 363, 364 (Minn. 1989) ). "Therefore, a party challenging a statute has the very heavy burden of demonstrating beyond a reasonable doubt that the statute is unconstitutional." Id. (quotation omitted).
I.
First, Bedeau argues that the predatory-offender registration statute infringes on her substantive due-process rights by requiring registration as a predatory offender based on a dismissed charge.[1] The Due Process Clauses of both the Minnesota and United States Constitutions provide that the government cannot deprive a person of "life, liberty, or property without due process of law." U.S. Const. amends. V, XIV ; Minn. Const. art. I, § 7. "Both clauses prohibit certain arbitrary, *430 wrongful government actions, regardless of the fairness of the procedures used to implement them." Boutin , 591 N.W.2d at 716 (quotation omitted). If a statute implicates a fundamental right, "the state must show a legitimate and compelling interest for abridging that right." Id. When a statute does not implicate a fundamental right, substantive due process only requires that the statute "provide a reasonable means to a permissible objective." Id.
Bedeau asserts that requiring her to register as a predatory offender implicates her fundamental right to liberty. In Boutin , the supreme court held that the registration statute did not implicate a fundamental right, was rationally related to the legitimate state interest of solving crimes, and did not violate substantive due process. Id. at 717-18. But Bedeau argues that since Boutin was decided in 1999, a series of local ordinances were enacted that severely restrict the rights of a registered predatory offender. Bedeau argues that these ordinances implicate fundamental rights because they impact "every aspect of a person's life-where to live, where to work, where to travel, and with whom to associate."
Bedeau generally references these ordinances restricting the rights of registered predatory offenders, but does not argue that she is personally affected by any of these ordinances. Bedeau lacks standing to challenge these ordinances because she offers no argument that she has suffered or is in immediate danger of suffering some direct injury. See Paulson v. Lapa, Inc. , 450 N.W.2d 374, 380 (Minn. App. 1990) (stating that to challenge a statute's constitutionality, the challenger must show that it has sustained or is in immediate danger of sustaining a direct injury resulting from the statute's enforcement), review denied (Minn. Mar. 22, 1990). Therefore, whether these ordinances implicate Bedeau's fundamental rights is not properly before us. See id.
Next Bedeau argues that the registration statute restricts her right to interstate travel. "The right to interstate travel is a fundamental right recognized by the United States Constitution." Schatz v. Interfaith Care Ctr. , 811 N.W.2d 643, 654 (Minn. 2012). A statute does not burden the right to interstate travel unless it affects one of the three components of that right: (1) the right of a citizen of one state to enter and leave another state; (2) the right to be treated as a welcome visitor rather than an unfriendly alien; and (3) for travelers who elect to become permanent residents, the right to be treated like other citizens of that state. Id. (citing Saenz v. Roe , 526 U.S. 489, 500, 119 S.Ct. 1518, 1525, 143 L.Ed.2d 689 (1999) ).
Bedeau implicitly invokes all three components by arguing that the registration statute makes interstate travel "more complicated for her" due to burdens imposed by other states on registrants. Minn. Stat. § 243.166, subd. 3(b) (2018) requires a registered offender to give notice to the new state's (the state Bedeau wants to travel to) registration agency if that state has a registration requirement. Bedeau characterizes this as prompting "a web of registration requirements dependent upon the array of other registration requirements enacted by several other states." But as the supreme court noted in Boutin , "the registration statute does not restrict [a registrant's] ability ... to move out of state." 591 N.W.2d at 717. We have also explicitly rejected the argument that the predatory-offender statute violates an individual's fundamental right to interstate travel. See State v. Munger , 858 N.W.2d 814, 824 (Minn. App. 2015) (holding that appellant failed to demonstrate that the registration statute infringed on his fundamental *431 right to interstate travel), review denied (Minn. Mar. 25, 2015). Furthermore, Bedeau does not allege any present intention to travel to another state and therefore lacks standing to assert this claim. See Paulson , 450 N.W.2d at 380.
Bedeau also argues that the registration statute restricts her constitutional right to marry and live with her family. Minn. Stat. § 244.057 (2018) requires supervising corrections agencies to notify the appropriate child protection agency before authorizing the offender to live in a household where children are residing. This statute does not restrict Bedeau's right to live in a household where children are residing, but merely requires the appropriate notification. Moreover, Bedeau again lacks standing to challenge Minn. Stat. § 244.057 because she offers no argument that she has suffered or is in immediate danger of suffering some direct injury based on this statute. See Paulson , 450 N.W.2d at 380.
Boutin held that the registration statute at issue in this case did not implicate a fundamental right. 591 N.W.2d at 718. We are bound by the decision in Boutin . See State v. M.L.A. , 785 N.W.2d 763, 767 (Minn. App. 2010) ("The district court, like this court, is bound by supreme court precedent and the published opinions of the court of appeals ...."), review denied (Minn. Sept. 21, 2010). Bedeau has failed to distinguish her case from Boutin .
Because the registration statute does not implicate a fundamental right, it must meet the rational basis standard of review to be constitutional. Boutin , 591 N.W.2d at 717.
The rational basis standard requires: (1) that the act serve to promote a public purpose; (2) that the act not be an unreasonable, arbitrary or capricious interference with a private interest, and (3) that the means chosen bear a rational relation to the public purpose sought to be served.
Id. at 718. (quotation omitted). In Boutin , the supreme court noted that "the primary purpose of the [registration] statute is to create an offender registry to assist law enforcement with investigations." Id. at 717. Furthermore, the supreme court determined that keeping such a list is "rationally related to the legitimate state interest of solving crimes." Id. at 718. Thus, the supreme court concluded that the registration statute met the rational basis standard of review and did not violate Boutin's constitutional right to substantive due process. Id. at 717-18. Because Bedeau has failed to demonstrate that the registration statute implicates a fundamental right and that the statute is not rationally related to a legitimate state interest, she has failed to establish that the registration statute violates her right to substantive due process.
II.
Next, Bedeau argues that the district court violated her right to procedural due process by requiring her to register as a predatory offender based on a charge that was dismissed, thus depriving her of an opportunity to contest the charge. "When procedural due process is at issue, we must first determine whether a protectable liberty interest is at stake." Id. at 718. Minnesota has adopted the "stigma-plus" test, which holds that "a liberty interest is implicated when a loss of reputation is coupled with the loss of some other tangible interest." Id. (citing Paul v. Davis , 424 U.S. 693, 701-02, 96 S.Ct. 1155, 1160-61, 47 L.Ed.2d 405 (1976) ).
In Boutin , the supreme court held that although being labeled a predatory offender is injurious to one's reputation, that injury must still be coupled with the loss of *432 some other recognizable interest. Id. The supreme court also rejected the argument that complying with the requirements of the registration statute constitutes the loss of a recognizable interest. Id. The supreme court concluded that "there is no recognizable interest in being free from having to update address information" and that such a minimal burden is insufficient to satisfy the stigma-plus test. Id. Consequently, the supreme court held that the registration statute did not violate Boutin's right to procedural due process. Id. at 719.
Bedeau argues that since Boutin , the legislature has substantially expanded the predatory-offender-registration requirements tasking offenders with "additional onerous burdens." Bedeau identifies numerous changes to the registration statute that she claims restrict offenders' liberty: (1) an offender without a primary address must report weekly to law enforcement in the jurisdiction in which she is staying, Minn. Stat. § 243.166, subd. 3a(e) (2018) ; (2) an offender working or attending school in a jurisdiction other than where she resides must register with law enforcement in the area where she works or attends school, Minn. Stat. § 243.166, subd. 3(c) (2018) ; (3) an offender working or attending school outside of Minnesota must register in the state where she works or attends school, Minn. Stat. § 243.166, subd. 3(d) (2018) ; (4) an offender must provide a primary address, any secondary addresses in Minnesota, addresses of all property owned, leased, or rented in Minnesota, addresses of employment and schools, and the year, model, make, license plate number, and color of all motor vehicles owned or regularly driven by the offender, Minn. Stat. § 243.166, subd. 4a(a) (2018) ; (5) an offender must consent to a treatment facility, shelter, or residential housing unit releasing information to law enforcement about her admission to, or residence in such facilities, Minn. Stat. § 243.166, subd. 4(a) (2018) ; (6) prior to admission to a healthcare facility, an offender must notify the facility of their registration status and inform law enforcement that inpatient admission will occur, Minn. Stat. § 243.166, subd. 4b(b) (2018), and once law enforcement receives such notice, the healthcare facility must disseminate a fact sheet, including information about the offender and likely victims, to all the residents of the general facility, Minn. Stat. § 243.166, subd. 4b(c), (d) (2018) ; and (7) corrections agencies supervising an offender must notify a child-protection agency before authorizing the offender to live in a household with children, Minn. Stat. § 244.057.
With the exception of the healthcare and child-protection agency notifications, these requirements are similar to updating address information, which the supreme court determined was "a minimal burden" and not a "sufficiently important interest" as required by the stigma-plus test. Boutin , 591 N.W.2d at 718. Although the registration statute now requires offenders to provide more information than in 1999, we conclude that these changes still impose only a minimal burden on offenders.[2]
Bedeau argues that the healthcare notification burdens her liberty interest because it authorizes dissemination of offender *433 information to the general public. While such dissemination of information may be injurious to Bedeau's reputation, to succeed on a due-process challenge, she must suffer more than mere stigma. See id. ("[A] person must suffer more than mere stigma, the injury to reputation must also be coupled with the loss of some other recognizable interest."). Bedeau does not persuade us that she has been or is likely to be deprived of healthcare or any other recognizable interest through the dissemination of her registration information to the general public. This additional requirement does not sufficiently burden Bedeau's liberty interest to constitute a due-process violation.
Bedeau contends that she has had difficulty finding housing and employment as a result of her registration as a predatory offender, but she ultimately has obtained both. She also alleges that her employer demoted her after discovering her predatory registration. The district court noted that Bedeau "failed to provide sufficient evidence to suggest that the registration requirement was the primary cause of her difficulties, rather than her recent conviction and prison incarceration." We agree with the district court's conclusion that these facts did "not significantly enhance the 'plus factor' with respect to her procedural due-process claim ...." But even if the difficulties finding housing and employment are enough to meet the "plus" portion of the test and establish that a liberty interest is implicated, Bedeau was not denied procedural due process.
Bedeau argues that she never had a meaningful opportunity to contest the predatory charge against her, as that charge was dismissed, citing Heddan v. Dirkswager , 336 N.W.2d 54, 59 (Minn. 1983) ("The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." (quotation omitted)). In Heddan , the supreme court noted that "some form of hearing is required before an individual is finally deprived of a property interest." Id. (citing Wolff v. McDonnell , 418 U.S. 539, 557-58, 94 S.Ct. 2963, 2975-76, 41 L.Ed.2d 935 (1974) ). Here, Bedeau had the opportunity to challenge the probable cause determination prior to pleading guilty, and instead, Bedeau's attorney acknowledged that there was probable cause for the false-imprisonment charge. Furthermore, Bedeau was notified of and agreed to the registration requirements during the plea hearing, during the sentencing hearing, and in a predatory-offender-notification form. Therefore, even if Bedeau can identify a constitutionally protected interest that she was denied based on the statute, she had a meaningful opportunity to challenge the probable cause for the registration offense, and thus procedural due process was satisfied.
III.
Finally, Bedeau argues that the registration statute violates the separation-of-powers doctrine by placing complete power to require registration in the hands of the prosecution-the executive branch. Article III, section 1 of the Minnesota Constitution provides that government shall be divided into the legislative, executive, and judicial branches. Furthermore, "[n]o person or persons belonging to or constituting one of these departments shall exercise any of the powers properly belonging to either of the others except in the instances expressly provided in this constitution." Minn. Const. art. III, § 1.
Bedeau cites State v. Olson , 325 N.W.2d 13, 18 (Minn. 1982), for the proposition that the prosecutor cannot exercise the judicial function. In Olson , however, the supreme court considered the constitutionality of a statute granting district courts *434 the authority to sentence without regard to mandatory minimum requirements upon the condition that the prosecutor move for such an action and that the district court find substantial mitigating factors. Olson , 325 N.W.2d at 17. The supreme court concluded that the legislature cannot condition the imposition of a sentence by the court upon the prior approval of the prosecutor. Id. at 18.
Unlike the statute in Olson , the registration statute does not condition registration solely upon the approval of the prosecutor. Compare Minn. Stat. § 609.11, subd. 8 (Supp. 1981), with Minn. Stat. § 243.166, subd. 1b(a)(2). While the prosecutor exercises discretion in charging crimes, the prosecutor may only charge a crime when there is probable cause to believe the individual committed the crime. See State v. Smith , 270 N.W.2d 122, 124 (Minn. 1978) (holding that the prosecutor must have probable cause to believe that the accused committed an offense). A criminal complaint must contain a statement of facts supporting probable cause for each charge, which must be made under oath. See Minn. R. Crim. P. 2.01, subds. 1, 2. And a judge must determine whether sufficient facts exist to establish probable cause that an offense has been committed and that the defendant committed it. See Minn. R. Crim. P. 2.01, subd. 4. In State v. Haukos , we held that "it is the judiciary's determination of probable cause, not the prosecutor's bringing of a charge, that triggers the statutory basis for ... registration." 847 N.W.2d 270, 273 (Minn. App. 2014). While the prosecutor may exercise discretion to charge offenses that could trigger predatory-offender registration, that discretion is checked by the judiciary.
Furthermore, Minnesota caselaw has held that the requirement that a defendant register as a predatory sex offender is a collateral consequence flowing from the conviction rather than a direct punitive consequence. See Kaiser v. State , 641 N.W.2d 900, 904 (Minn. 2002) ("The court of appeals was correct ... in concluding that because the predatory offender registration is not a punitive consequence, it is collateral in nature."); Boutin , 591 N.W.2d at 717 (noting that the predatory registration statute is civil and regulatory because it does not have the fundamental characteristics of punishment). Accordingly, the predatory registration statute's requirement does not implicate the separation-of-powers doctrine because a judge must determine whether probable cause supports the charged offenses and because registration is a collateral consequence of a conviction.
DECISION
Because there are no genuine issues of material fact and the district court did not err in its application of the law to Bedeau's due process or separation-of-powers claims, we affirm the district court's grant of summary judgment to Evans.
Affirmed.

Evans notes that Bedeau is actually required to register based on a conviction for an offense arising out of the same set of circumstances as the charged false imprisonment offense. See Minn. Stat. § 243.166, subd. 1b(a)(2).

We respectfully note Chief Judge Cleary's concern that Boutin is "arguably outdated" as the predatory-registration requirements, which were once a "minimal" burden, are becoming a "substantial" burden. State v. Collier , No. A16-0268, 2017 WL 5985377, at *6 (Minn. App. Dec. 4, 2017) (Cleary, C.J., concurring), review denied (Minn. Feb. 28, 2018). Nevertheless, we are required to decide this case based on supreme court precedent. See State v. Curtis , 921 N.W.2d 342, 342 (Minn. 2018) ("The court of appeals is bound by supreme court precedent.").