*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A23-1622**

Nathan Alexander Jefferson,
Appellant,

vs.

Drew Evans, et al.,
Respondents.

**Filed June 3, 2024
Affirmed
Schmidt, Judge**

Ramsey County District Court
File No. 62-CV-22-3754

Bradford Colbert, Legal Assistance to Minnesota Prisoners, St. Paul, Minnesota (for appellant)

Keith Ellison, Attorney General, Angela Helseth Kiese, Assistant Attorney General, St. Paul, Minnesota (for respondents)

Considered and decided by Schmidt, Presiding Judge; Slieter, Judge; and Wheelock, Judge.

**NONPRECEDENTIAL OPINION**

**SCHMIDT**, Judge

Appellant Nathan Alexander Jefferson challenges the dismissal of his civil claims alleging that requiring him to register as a predatory offender violates his constitutional rights. We affirm.

In December 1995, the state charged Jefferson with third-degree felony assault in violation of Minn. Stat. § 609.223, subd. 1 (1994). The complaint alleged that, while riding in a car with a female, Jefferson became extremely upset, the female stopped the car, she got out of the vehicle, and ran toward a nearby house. Jefferson followed her and repeatedly struck her until she lost consciousness. In a plea agreement, Jefferson pleaded guilty to an amended charge of false imprisonment of an adult under Minn. Stat. § 609.255 (1994). The district court accepted the plea and sentenced Jefferson to 28 months in prison.

At the time of Jefferson's 1995 offense and plea, neither third-degree assault nor false imprisonment of an adult were offenses that required registration as a predatory offender. *See* Minn. Stat. § 243.166 (1994). In 2005, the legislature amended the statute to include false imprisonment as an offense requiring registration. *See* 2005 Minn. Laws ch. 136, § 8 (codified as amended at Minn. Stat. § 243.166, subd. 3a (2006)).

In February 2019, the state charged Jefferson with first-degree possession of a dangerous weapon and unlawful possession of a firearm. Jefferson pleaded guilty to the unlawful-possession charge, and the state dismissed the first-degree possession charge.

In the presentence investigation report, the probation officer noted that Jefferson might need to register as a predatory offender because the unlawful possession of a firearm may constitute a secondary offense given that Jefferson had a prior registerable offense. The probation officer stated that the Minnesota Bureau of Criminal Apprehension (BCA)

---

[1] The facts are undisputed.

would review the registration requirement upon receipt of the complaint and sentencing documents. At the sentencing hearing, defense counsel referenced the probation officer's note about registration, stating that "it is unclear through the BCA whether or not he has to register." Nonetheless, defense counsel stated that Jefferson wished to continue with sentencing. The district court sentenced Jefferson to 60 months in prison.

In the spring of 2021, while Jefferson was incarcerated, the BCA notified him that he must register as a predatory offender. On April 28, 2021, Jefferson registered as a predatory offender. He must continue to register until June 27, 2032. Jefferson was released from prison on June 28, 2022.

Jefferson filed a civil complaint pursuant to 42 U.S.C. § 1983 against respondent Drew Evans, in his official capacity as the superintendent of the BCA, requesting an injunction prohibiting Evans from requiring Jefferson to register as a predatory offender. The complaint alleged five legal theories: (1) a violation of predatory-offender registration statutes Minn. Stat. §§ 243.166, .167 (2022), (2) a procedural-due-process violation, (3) a substantive-due-process violation, (4) an ex post facto violation, and (5) an equal-protection violation.[2]

Evans filed motions for summary judgment and to dismiss. The district court granted both motions, reasoning that the BCA properly applied the registration statute to Jefferson and that Jefferson's various alleged constitutional violations failed.

Jefferson appeals.

---

[2] On appeal, Jefferson does not make arguments about violations of Minn. Stat. § 243.166 (part of his first claim) or about equal protection (his fifth claim).

**DECISION**

Jefferson argues that the district court erred in granting the motion for summary judgment. A district court must grant a motion for summary judgment "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Minn. R. Civ. P. 56.01. When, as here, the facts are undisputed, we review a district court's legal conclusions on summary judgment de novo. *Commerce Bank v. W. Bend Mut. Ins. Co.*, 870 N.W.2d 770, 773 (Minn. 2015).

## I. The applicable statutes require Jefferson to register.

Jefferson raises several arguments to contend the district court erred in dismissing his complaint. Before addressing those specific constitutional arguments, we provide background on the statutory basis requiring Jefferson to register.

Minnesota Statutes section 243.167 requires registration as a predatory offender if the offender was previously convicted of an offense listed in Minn. Stat. § 243.166 and if the new conviction is "a crime against the person." *See* Minn. Stat. § 243.167, subd. 2.

Jefferson's conviction of unlawful possession of a firearm constitutes a crime against a person. *See* Minn. Stat. § 243.167, subd. 1 (providing that a "crime against the person" includes a violation of any offense listed in Minn. Stat. § 624.713 (2022)); *see also* Minn. Stat. § 624.713, subd. 2(b) (criminalizing unlawful possession of a firearm). Jefferson's false-imprisonment conviction is listed as an offense that requires registration. *See* Minn. Stat. § 243.166, subd. 1b(a)(2)(ii). As such, the district court properly determined that the relevant statutes require Jefferson to register as a predatory offender.

**II.    The district court did not err in dismissing Jefferson's due-process claims.**

Jefferson argues that requiring him to register as a predatory offender violates his constitutional rights to substantive and procedural due process. The Due Process Clauses of the Minnesota and United States Constitutions provide that the government cannot deprive a person of "life, liberty, or property without due process of law." U.S. Const. amends. V, XIV; Minn. Const. art. I, § 7. Both clauses also prohibit "certain arbitrary, wrongful government actions, regardless of the fairness of the procedures used to implement them." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (quotation omitted); *see also Sartori v. Harnischfeger Corp.*, 432 N.W.2d 448, 453 (Minn. 1988) (stating the due-process protection provided under Minnesota's Constitution is identical to that guaranteed under the United States Constitution). We review due process challenges de novo. *Bendorf v. Comm'r of Pub. Safety*, 727 N.W.2d 410, 413 (Minn. 2007).

We begin by addressing Jefferson's arguments related to substantive due process and then turn to those relating to procedural due process.

**A.    Substantive due process**

The level of scrutiny for a substantive-due-process challenge depends on whether the statute at issue implicates a fundamental right. If the statute implicates a fundamental right, the court applies strict-scrutiny review and "the state must show a legitimate and compelling interest for abridging that right." *Boutin v. LeFleur*, 591 N.W.2d 711, 716 (Minn. 1999). But if the statute does not affect a fundamental right, courts apply rational-basis review and the state must show the statute provides "a reasonable means to a permissible objective." *Id.* Under the rational-basis test, the statute must "serve to promote

5

a public purpose"; the statute must "not be an unreasonable, arbitrary or capricious interference with a private interest"; and "the means chosen [must] bear a rational relation to the public purpose sought to be served." *Id.* at 718 (quotations omitted).

In *Boutin*, the Minnesota Supreme Court concluded that the predatory-offender registration statute did not implicate a fundamental right. 591 N.W.2d at 717. In applying the rational-basis test, the court concluded that because the statute was civil and regulatory in nature, the statute served a public purpose, and the means chosen bore a rational relationship to the public purpose sought to be served. *Id.*

Jefferson acknowledges that *Boutin* is binding on this court. Jefferson argues that there is no rational basis for requiring him to register as a predatory offender. Jefferson contends that: Minnesota's predatory-offender registration scheme does not serve a public purpose; requiring him to register is an unreasonable, arbitrary, or capricious interference with his privacy interests; registration does not bear a rational relationship to the state's public purpose; and applying the predatory-offender registration statute to Jefferson leads to an absurd result that is contrary to its legislative purpose.

We rejected nearly identical arguments in *Nguyen v. Evans*, No. A21-1319, 2022 WL 1210277, at *8 (Minn. App. 2022), *rev. denied* (Minn. July 19, 2022).[3] There, we applied *Boutin* to uphold the registration statute against a substantive-due-process challenge. *Nguyen*, 2022 WL 1210277, at *8. In *Boutin*, the supreme court explained that "the primary purpose of the statute is to create an offender registry to assist law

---

[3] We cite nonprecedential cases in this opinion for their persuasive authority. *See* Minn. R. Civ. App. P. 136, subd. 1(c).

6

enforcement with investigations" and that keeping a list of offenders was "rationally related to the legitimate state interest of solving crimes." 591 N.W.2d at 717-18.

Given recent expansions of the predatory-offender registration statute, we recognize that *Boutin* does not foreclose all constitutional challenges. *See Werlich v. Schnell*, 958 N.W.2d 354, 374 (Minn. 2021). It is possible that the Minnesota Supreme Court may decide that the circumstances of this case, combined with the statutory expansions, require an extension of the state or federal substantive-due-process rights. Expanding upon constitutional rights is well within the supreme court's purview. *See In re Integration of Bar of Minn.*, 12 N.W.2d 515, 518 (Minn. 1943) (providing that the state constitution makes the supreme court the final authority in protection of the rights guaranteed by the constitution); *see also State v. Hill*, 871 N.W.2d 900, 905-06 (Minn. 2015) (noting that the supreme court is "reluctant to expand the concept of substantive due process because guideposts for responsible decision-making in this unchartered area are scarce and open-ended"). But that is not the role of this court. *See State v. Rodriguez*, 738 N.W.2d 422, 431-32 (Minn. App. 2007) ("[I]t is not the role of this court to make a dramatic change in the interpretation of the Minnesota Constitution when the supreme court has not done so."), *aff'd*, 754 N.W.2d 672 (Minn. 2008). Given that *Boutin* is controlling on this court, we decline to stray from the binding caselaw that has determined that the registration requirements satisfy the rational-basis test for a substantive-due-process claim. *See, e.g.*, *Boutin*, 591 N.W.2d at 716-17; *Thibodeaux v. Evans*, 926 N.W.2d 602, 606-07 (Minn. App. 2019); *Bedeau v. Evans*, 926 N.W.2d 425, 429-32 (Minn. App. 2019), *rev. denied* (Minn. June 26, 2019); *Nguyen*, 2022 WL 1210277, at *8.

7

Jefferson also argues that requiring him to register as a predatory offender violates the finality-in-sentencing requirements of substantive due process. In making this argument, Jefferson relies on caselaw regarding modifications of sentences. *See, e.g.*, *State v. Calmes*, 632 N.W.2d 641, 645 (Minn. 2001) (providing that a defendant's due-process rights may be violated when her sentence is enhanced after she "has developed a crystallized expectation of finality in the earlier sentence"). But the supreme court has consistently held that the requirement to register as a predatory offender is not part of the criminal sentence. *Boutin*, 591 N.W.2d at 717. As a civil, regulatory consequence rather than a punitive consequence, the predatory-offender registration requirement is a collateral consequence of a sentence. *See Kaiser v. State*, 641 N.W.2d 900, 907 (Minn. 2002) (holding that the statutory duty to register as a predatory offender is a collateral consequence of a guilty plea because it is not part of defendant's punishment). The supreme court has since reaffirmed that principle and declined to overrule *Kaiser*. *See Taylor v. State*, 887 N.W.2d 821, 826 (Minn. 2016). Moreover, this court rejected this exact argument in *Nguyen*. *See Nguyen*, 2022 WL 1210277, at *8-9.

Given our error-correcting role, we conclude that the district court did not err by dismissing Jefferson's substantive-due-process claim.

### B. Procedural due process

Jefferson also argues the district court erred by granting the BCA's motion for summary judgment because he was denied procedural due process. Courts conduct a two-step analysis to determine whether an individual's procedural-due-process rights have been violated. *Rew v. Bergstrom*, 845 N.W.2d 764, 785 (Minn. 2014). First, a court determines

8

whether the government deprived a person of a protected liberty interest. *Id.* If the answer to this first question is no, then no process is due. *Id.* But, if the government's actions did deprive an individual of a protected liberty interest, then the second step requires a court to determine "whether the procedures followed by the [government] were constitutionally sufficient." *Id.* (alteration in original) (quotation omitted).

In evaluating step one, the Minnesota Supreme Court has adopted the "stigma-plus" test. *Boutin*, 591 N.W.2d at 718. The "stigma-plus" test has two requirements: (1) a liberty interest is implicated, and (2) a loss of reputation—*plus*—the loss of some other tangible interest. *Id.* In *Boutin*, the supreme court concluded that being labeled a predatory offender resulted in a loss of reputation, which satisfied the stigma requirement. *Id.* However, the "minimal burden" of the registration requirements did not amount to loss of "some other tangible interest," which failed to satisfy the "plus" requirement. *Id.* Since registration did not implicate a protected liberty interest, the supreme court held that the predatory-offender registration statute did not violate procedural due process. *Id.* at 718-19.

Jefferson argues that after the supreme court decided *Boutin*, the legislature amended the registration statute such that it now affects his right to receive adequate healthcare.[4] Minn. Stat. § 243.166, subd. 4a(b). But, in a precedential opinion, we held

---

[4] At the time the supreme court decided *Boutin*, the registration statute required persons to provide personal information, fingerprints, and a photograph to law enforcement; annually verify their address by mail; and notify law enforcement five days before changing their address. Minn. Stat. § 243.166, subds. 3, 4 (1998). The legislature has amended the registration statute, to impose additional requirements. *See* Minn. Stat. § 243.166, subds. 3-4b (2022). The current statute requires registrants to provide law enforcement with: their primary and secondary addresses; the addresses of any property they own, lease, or rent; all locations where they are employed and schools where they are enrolled; the

9

that these new requirements did not lead to the loss of a liberty interest under the "stigma-plus" test. *Bedeau*, 926 N.W.2d at 432. We reasoned that the expanded registration requirements imposed "only a minimal burden on offenders." *Id.* at 432; *see also Thibodeaux*, 926 N.W.2d at 608 (rejecting argument that the new statutory requirements impose more than a minimal burden); *Lange v. Evans*, No. A21-1546, 2022 WL 2438634, at *6 (Minn. App. July 5, 2022) (rejecting argument that the new statutory requirements would hinder future applications for work and housing where Lange failed to explain how the additional requirements have done so presently), *rev. denied* (Minn. Oct. 18, 2022). As a precedential case addressing nearly indistinguishable arguments, *Bedeau* is controlling. We decline to reach an alternative conclusion.

Jefferson also contends that the BCA violated his right to procedural due process when he was required to register "without any sort of process to challenge his registration." He asserts his procedural-due-process rights were violated because when he pleaded guilty to false imprisonment, there was a possible challenge to registration since false imprisonment was not a registerable offense at the time. But binding precedent holds that if a defendant's due-process rights were honored during the underlying criminal proceedings, there is no procedural-due-process violation in requiring registration later based on that conviction. *Conn. Dep't of Pub. Safety v. Doe*, 538 U.S. 1, 6-7 (2003); *see*

---

year, make, model, color, and license-plate number of all the motor vehicles they own or regularly drive and the expiration date of motor-vehicle tabs for the motor vehicles they own; and all telephone numbers at which they can be reached. Minn. Stat. § 243.166, subd. 4a(a) (2022). The amended statute also requires registrants to disclose their registration status before admission to a healthcare facility. *Id.*, subd. 4b(b).

10

*also Bedeau*, 926 N.W.2d at 431-33 (holding Bedeau received procedural due process during her criminal proceedings related to the registration obligation); *Lange*, 2022 WL 2438634, at \*6 (holding Lange's procedural-due-process rights were protected given he could challenge probable cause in his criminal case); *Nguyen*, 2022 WL 1210277, at \*9 (holding Nguyen received due process by challenging probable cause during the underlying criminal proceedings). Since Jefferson received due process in the underlying criminal proceeding—the 2019 conviction for unlawful possession of a firearm—requiring him to register based on that conviction does not violate his procedural-due-process rights. *Id.*

As an error-correcting court, we are required to follow the binding precedent from this court and from the Minnesota Supreme Court. *State v. M.L.A.*, 785 N.W.2d 763, 767 (Minn. App. 2010), *rev. denied* (Minn. Sept. 21, 2010). As such, the district court did not err in denying Jefferson's procedural-due-process challenge.

## III.     The statute does not violate prohibitions against ex post facto laws.

Jefferson contends that requiring him to register based on an offense for which his sentence expired in 1998 violates the ex post facto clauses of the Minnesota and United States Constitutions. Both constitutions prohibit the enactment of ex post facto laws. *See* U.S. Const. art. I, § 10; Minn. Const. art. I, § 11. A statute violates the ex post facto clause if the law applies to events occurring before its enactment and disadvantages the offender by altering the definition of criminal conduct or increasing the punishment for a crime. *Lynce v. Mathis*, 519 U.S. 433, 441 (1997); *Rew*, 845 N.W.2d at 789-90.

This court considered the same ex post facto challenge to the registration statute in *State v. Manning*, 532 N.W.2d 244 (Minn. App. 1995), *rev. denied* (Minn. July 20, 1995).

11

There, we determined that the statute is regulatory and not punitive because it serves the regulatory purpose of assisting police investigations. *Manning*, 532 N.W.2d at 248-49. We concluded that any additional burden on offenders from police scrutiny when local sex crimes occur "is not excessive in relation to the important regulatory purpose served." *Id.* We also held that registration is not historically regarded as punishment because governments have employed various methods of registration to provide police "easy access to necessary information." *Id.* Because the statute is regulatory in nature and not punitive, the *Manning* court held that the statute does not violate constitutional prohibitions against ex post facto laws. *Id.* at 249.

Jefferson recognizes that *Manning* is binding authority for the constitutionality of the version of the statute in effect at that time. But Jefferson asserts that the amendments to the registration statute since this court decided *Manning* justify revisiting whether the statute violates the ex post facto clauses.[5] We disagree.

Jefferson correctly notes that the current version of the registration statute has more stringent registration requirements than the version analyzed in *Manning*. *Compare* Minn. Stat. § 243.166 (1994), *with* Minn. Stat. § 243.166 (2022). But the substance of Jefferson's arguments does not relate to the amendments to the registration statute. Though the means

---

[5] Jefferson also relies on *State v. Jones*, 729 N.W.2d 1 (Minn. App. 2007), to argue that the registration statute is punitive. However, in *Jones*, this court concluded that the registration statute was punitive for the purpose of the *Cabazon*/*Stone* test (*see California v. Cabazon Band of Mission Indians*, 480 U.S. 202, 209 (1987); *State v. Stone*, 572 N.W.2d 725, 729 (Minn. 1997)), which distinguished from the analysis in *Boutin* (s*ee Jones*, 729 N.W.2d at 9-11; *see also State v. LaFountain*, 901 N.W.2d 441, 449 (Minn. App. 2017) (distinguishing this court's conclusion in *Jones* from *Boutin*)).

of registration may have been amended, Jefferson has not demonstrated how the more stringent requirements make *Manning* inapplicable. When statutory changes do not undermine reasoning in a precedential decision, it is binding. *M.L.A.*, 785 N.W.2d at 767.

The district court did not err by determining that the current version of the registration statute does not violate the ex post facto clauses.[6]

**Affirmed.**

---

[6] We note that Jefferson advances several policy arguments on appeal. Regardless of how meritorious these arguments may be, "this court is limited in its function to correcting errors it cannot create public policy." *LaChapelle v. Mitten*, 607 N.W.2d 151, 159 (Minn. App. 2000), *rev. denied* (Minn. May 16, 2000); *see also Lake George Park, L.L.C. v. IBM Mid- Am. Emps. Fed. Credit Union*, 576 N.W.2d 463, 466 (Minn. App. 1998) ("This court, as an error correcting court, is without authority to change the law."), *rev. denied* (Minn. June 17, 1998). Accordingly, such arguments are better directed to the legislature or the supreme court. Since we are unable to grant the policy relief that Jefferson requests, we decline to consider those arguments.